WINNETT TIMES PUBLISHING CO., RESPONDENT, *v.*
BERG, APPELLANT.

(No. 6,260.)

(Submitted March 15, 1928.  Decided March 27, 1928.)

[265 Pac. 710.]

*Summons — Action in Personam — Jurisdiction — Service by
Publication Ineffectual.*

Summons—Personal Service Requisite in Actions *in Personam.*
1.  The provisions of section 9117, Revised Codes 1921, regulating
service of summons by publication, do not abrogate the rule of the
common law which requires personal service in actions *in personam.*

Same—Action *in Personam*—Service by Publication on Nonresident De-
fendant Ineffectual.
2.  Where the purpose of an action is to determine the personal
rights and obligations of a nonresident defendant, i. e., where it is
*in personam*, service of summons by publication is ineffectual for
any purpose.

Same—Failure of Personal Service of Summons in Action *in Personam*—
Court Without Jurisdiction to Enter Default of Defendant.
3.  An action by the purchaser of personal property to compel the
seller, a nonresident, to surrender. promissory notes given by plain-
tiff to defendant in payment of the property, because of alleged
fraud in the sale, was an action *in personam*, and the fact that the
notes were in the possession of a local attorney did not change
the character of the action where the attorney was not made a
party to the action and the notes were not impounded by court
process; the court did not obtain jurisdiction by substituted ser-
vice of summons and its judgment rendered on default of defend-
ant was void.

[1]  Process, 32 Cyc., p. 467, n. 24, p. 489, n. 18.
[2]  Judgments, 34 C. J., sec. 1661, p. 1171, n. 94.  Process, 32 Cyc.,
p. 471, n. 60.
[3]  Courts, 15 C. J., sec. 100, p. 802, n. 96.  Judgments, 33 C. J.,
sec. 19, p. 1064, n. 49.

*Appeal from District Court, Fergus County; John C. Hun-
toon, Judge.*

2.  What service is sufficient to constitute due process as basis of
judgment *in personam*, see note in 50 L. R. A. 577.  See, also, 21 Cal.
Jur. 495; 21 R. C. L. 1284.  Service by publication on resident in
action *in personam* as due process of law, see notes in 35 L. R. A.
(n. s.) 292; L. R. A. 1917C, 1143.  See, also, 21 Cal. Jur. 499; 21
R. C. L. 1292.

'ACTION by the Winnett Times Publishing Company against E. M. Berg. From a judgment for the plaintiff, defendant appeals. Reversed and remanded, with directions.

*Messrs. Belden & De Kalb, Mr. Merle C. Groene* and *Ethel S. W. Abbott,* for Appellant, submitted an original and a reply brief; *Mr. O. W. Belden* argued the cause orally.

*Mr. Oscar M. Ulsaker* and *Mr. E. G. Toomey,* for Respondent, submitted a brief; *Mr. Toomey* argued the cause orally.

MR. JUSTICE GALEN delivered the opinion of the court.

This action was instituted by the plaintiff in equity to compel the defendant, because of alleged fraud, to surrender for cancellation six promissory notes aggregating $968.56, with interest, executed by the plaintiff to the defenant in part payment for a certain printing plant and equipment connected therewith at the town of Winnett, which notes, with others, were secured by a chattel mortgage on the property sold. Service of process was made upon the defendant by publication, and, the defendant having failed to appear in the action, his default was entered, resulting in the entry of judgment in accordance with the prayer of plaintiff's complaint. The appeal is from the judgment.

Of defendant's several specifications of error but one question is presented necessary to be considered in disposition of this appeal, viz., Did the court have jurisdiction to enter the judgment?

The action was instituted July 25, 1924. By plaintiff's complaint it is alleged that on the seventeenth day of June, 1922, the plaintiff made, executed and delivered unto the defendant twenty-six promissory notes, each for the principal sum of $150, bearing interest at the rate of eight per cent per annum, due and payable one each month for twenty-six months, and also at the same time made and executed one additional note

for $68.56, as a last and final payment on the indebtedness, all of which were secured by a chattel mortgage on the property for which the notes were given in purchase. It is averred that on or about May 4, 1921, the defendant sold a printing plant and equipment to C. J. Doherty and C. E. Palmer, taking from them certain promissory notes and a chattel mortgage on the property, at which time a bill of sale was executed by the defendant for the property to them, including "a $1,500 equity in and to one Model L Mcrgenthaler-linotype machine No. 2403." It is then alleged, in substance, that, at the time of the sale of the property by the defendant to the plaintiff, the defendant represented to the plaintiff, and the plaintiff relied upon such representation, that the defendant was, on the fourth day of May, 1921, and at all subsequent times up to June 17, 1922, the owner of such $1,500 equity; whereas in truth and in fact he did not have any equity in the linotype machine in excess of $624. It is averred that the plaintiff assumed the obligation of Doherty and Palmer, and in lieu thereof gave to the defendant the twenty-seven promissory notes above mentioned, and in so doing relied upon defendant's representation that he was the owner of a $1,500 equity interest in the linotype machine. It is alleged that the plaintiff has paid the defendant nineteen of its notes, amounting to the sum of $2,850, besides interest thereon; that there are seven of the notes remaining unpaid, aggregating $958.58, which notes are in the possession of Chas. J. Marshall, of Lewistown, Montana, attorney for the defendant. It is averred that prior to the commencement of this action, the plaintiff "repeatedly demanded of the defendant that he surrender to the plaintiff sufficient" of the notes, or otherwise adjust the difference existing in the amount actually due and the amount erroneously shown to be due by the notes, but that the defendant has failed and refused to adjust the difference "or in any manner or at all to settle the difference between the plaintiff and the defendant as above set forth"; that the defendant threatens to negotiate the notes remaining unpaid unto bona fide pur-

chasers without notice; that the plaintiff has demanded the return of the unpaid notes; and that it be released from liability thereon, with which demand the defendant has neglected and refused to comply. The prayer is that "the defendant may be decreed to deliver up all of said notes remaining unpaid, as aforesaid, for cancellation; that, if said notes are now in defendant's possession, the defendant be decreed to procure the same, and that the same be canceled; that the defendant may be restrained by an injunction or order" of the court from parting with the unpaid notes, or from collecting them, and for general relief.

Upon the filing of the complaint, summons was issued and placed in the hands of the sheriff of Fergus county for service, who six days later made return that he was unable to find the defendant within the county of Fergus. Upon affidavit made and filed, an order for the publication of summons in the action was made. Thereafter, as appears from the affidavit of L. D. Forncrook, a deputy sheriff for Jackson county, state of Oregon, the defendant was, on the fourteenth day of August, 1924, personally served with a copy of the summons and of the complaint.

On the date of the filing of the complaint, the court made an order, which was, on July 26, 1924, personally served on Chas. J. Marshall at Lewistown, Montana, by whom the notes in question were held, requiring the defendant to appear and show cause on August 8, 1924, why he should not be enjoined from disposing of the notes during the pendency of the action, the defendant, his attorney and agents, and each of them, being "enjoined from selling, negotiating, collecting, or disposing of said notes, or causing their sale or disposition by or through any other persons, and from doing any of said things until the further order of the court." The defendant in the action was served with a copy of the order at Ashland, Oregon, by the deputy sheriff of Jackson county, Oregon, on August 14, 1924. No hearing appears to have been had upon this order, although the record discloses that hearing was continued

on August 8, 1924, until August 28, 1924, and from August
28, 1924, until September 5, 1924. When served on Berg,
August 14, 1924, he was advised thereby that something was
supposed to have occurred in the action before the court on
August 8, six days after he was served with notice. The tem-
porary injunction on order to show cause was continued in
effect until September 5, 1924, but no further extension of
time was allowed, nor hearing had on the order. On October
14, 1924, the defendant's default for failure to appear in the
action was entered by the clerk of the court, and thereafter,
on April 21, 1927, after the submission of proofs by the
plaintiff, judgment by default was entered. The determinative
question of law presented is whether the action is one *in rem,
quasi in rem,* or *in personam.*

No question is raised as to the regularity of the substituted
service, made in this action in accordance with the provisions
of section 9118 of the Revised Codes of 1921, wherein it is
provided that, "when publication is ordered, personal service
of a copy of the summons and complaint out of the state is
equivalent to publication and deposit in the post office." In
proper cases such substituted service is regular, as the statute
gives express recognition thereof. (*Silver Camp Min. Co.* v.
[1] *Dickert,* 31 Mont. 488, 3 Ann. Cas. 1000, 67 L. R. A.
940, 78 Pac. 967.) The provisions of the law regulating ser-
vice by publication "apply to all actions and proceedings in
which personal service of summons is not required to be made
in order to obtain relief, including every action or proceeding
commenced in any district court of this state to enforce any
legal or equitable lien upon, or claim to, or to remove any
encumbrance, or lien, or cloud, upon the title of real or per-
sonal property within this state." (Id., sec. 9117.) But this
statute does not abrogate the rule of the common law which
requires personal service of the summons in actions *in per-
sonam.* (*Silver Camp Min. Co.* v. *Dickert,* supra.) "Sub-
stituted service by publication, or in any other authorized
form, may be sufficient to inform parties of the object of pro-

ceedings taken where property is once brought under the control of the court by seizure or some equivalent act.'' (*Pennoyer* v. *Neff*, 95 U. S. 714, 24 L. Ed. 565 [see, also, Rose's U. S. Notes]; *Silver Camp Min. Co.* v. *Dickert,* supra.)

The law proceeds upon the theory that property is always [2] in the possession of its owner, either in person or by agent, and that its seizure by court process will inform the owner, not only that it has been taken into the custody of the court, but that he must look to any proceedings authorized by law upon such seizure for its condemnation or sale. (Story's Eq. Jur., 14th ed., sec. 93.)   Substituted ''service may also be sufficient in cases where the object of the action is to reach and dispose of property in the state, or of some interest therein, by enforcing a contract or a lien respecting the same.   *   *   *  In other words, such service may answer in all actions which are substantially proceedings *in rem.*  But where the entire object of the action is to determine the personal rights and obligations of the defendants, that is, where the suit is merely *in personam,* constructive service in this form upon a nonresident is ineffectual for any purpose.''   (*Pennoyer* v. *Neff,* supra; *Silver Camp Min. Co.* v. *Dickert,* supra.)   Judge Story says: ''The question as to the validity of a judgment rendered in the state of the plaintiff's domicile in an action therein brought against a defendant who resided in another state, and service of process was attempted to be had upon the defendant by publication or sending it through the mails, where there was no personal appearance, is an interesting one.   Substituted service by publication, or in any other authorized form, may be sufficient to inform parties of the object of proceedings taken where property is once brought under the control of the court by seizure or some equivalent act.   *   *   *   Such service may also be sufficient in cases where the object of the action is to reach and dispose of property in the state, or of some interest therein, by enforcing a contract or a lien respecting the same, or to partition it among different owners, or, when the public is a party, to condemn and appropriate it for

a public purpose. In other words, such service may answer in all actions which are substantially proceedings *in rem.* But where the entire object of the action is to determine the personal rights or obligations of the defendants, that is, where the suit is merely *in personam,* constructive service in this form upon a nonresident is ineffectual for any purpose. Process from the tribunals of one state cannot run into another state, and summon parties there domiciled to leave its territory and respond to proceedings against them. Publication of process or notice within the state where the tribunal sits cannot create any greater obligation upon the nonresident to appear. Process sent to him out of the state, and process published within it, are equally unavailing in proceedings to establish his personal liability." (Story's Eq. Jur., 14th ed., sec. 93.)

"Jurisdiction to render a judgment *in rem* rests upon the seizure or attachment of the property affected or the court's dominion or authority over the status in controversy. It is essential that the *res* be within the jurisdiction of the court at the time of the commencement of the action; that some process of the court shall have been served upon it; and that it shall have been brought within the direct control of the court. While the general rule in regard to jurisdiction *in rem* requires the actual seizure and possession of the *res* by an officer of the court, such jurisdiction may be acquired by acts which are of equivalent import and which stand for and represent the dominion of the court over the thing and in effect subject it to the control of the court." (34 C. J., sec. 1661, p. 1171.)

Between judgments *in personam* and *in rem* there are radical and important differences. "While the fundamental distinction between these two varieties of judgments are easily apprehended, well worked out in the books and practically very well understood, it has always been found difficult to formulate a satisfactory definition of the term '*in rem.*'" (Black on Judgments, 2d ed., sec. 792.)

The purpose of this action is to enable the plaintiff to avoid [3] liability on its promissory notes because of alleged fraudulent misrepresentation on the sale of the printing plant to it by the defendant. It is manifest that it is an action *in personam.* Although the notes in question were within the jurisdiction of the court, and endeavor was made to have them brought under control of the court, yet the character of the action is not thereby changed. Plaintiff's object was to avoid liability on the notes which is as much *in personam* as to the rights of the respective parties to the action as would be an action instituted by the defendant to secure a personal judgment against the plaintiff for the full amount due on the notes. A judgment affecting the amount of the plaintiff's liability on the notes because of alleged fraud is essentially *in personam.* The only property involved is the notes themselves, and the question presented is the amount of the plaintiff's liability thereon. Recovery thereon may be defeated because of defendant's fraud, but such an issue is entirely *in personam.*

An action *in personam* is one in form as well as substance, between the parties claiming the right, and the judgment binds the judgment debtor and those in privity with him, to some sort of personal liability. (*Gassert* v. *Strong,* 38 Mont. 18, 98 Pac. 497.) Here the action is to reduce the amount of the plaintiff's obligation represented by its promissory notes, and by the judgment the defendant is deprived of valuable property rights personal in character between the parties. The question is essentially one of personal liability on the notes or personal nonliability thereon. The action does not present question as to the relative rights of parties to personal property within the jurisdiction of the court impounded by court process, as in the case last cited, but rather liability or nonliability upon written evidence of an indebtedness.

"The mere fact that property is within the jurisdiction of the court is not sufficient to justify an action *in personam* against the defendant where he cannot be served with process; the property itself must be brought before the court. With

respect to proceedings *in rem,* and *quasi in rem,* the basis of the jurisdiction is the seizure of the property on which the judgment is to operate, and such jurisdiction cannot be acquired except by a lawful seizure, unless the action or proceeding is of such a character that the mere situs of the property to be affected within the territorial jurisdiction of the court is sufficient to confer jurisdiction; as for instance, in administration proceedings, condemnation proceedings, and mortgage foreclosure.'' (15 C. J. 802.)

In this case there was no process which operated to seize the property and bring it before the court. The defendant's attorney was not made a party to the action, and the mere allegation that the notes were in the attorney's possession gave the court no jurisdiction over them.

In the *Gassert-Strong Case,* the stock of a corporation was held by a third person within the court's jurisdiction, made a party to the action, and the question was to whom the *res,* i. e., the stock, belonged. The First National Bank of Butte, escrow-holder of the stock in question, was made a party defendant to the action, thus bringing the *res* before the court, whereas in the action now under consideration Charles Marshall, the holder of notes, was not made a party, and the notes were never before the court. The property in his possession was not subjected to the jurisdiction of the court, so that the judgment *in rem* was ineffectual. There was no property before the court upon which its judgment could operate.

The authorities are in agreement that a strictly personal judgment rendered by the state court in an action upon a money demand against a nonresident of the state, without personal service of process upon him within the state or appearance in the action in response to substituted or constructive service, is void, and cannot be enforced against property of such nonresident located within the state. And ''generally, if not universally, equity jurisdiction is exercised *in personam* and not *in rem,* and depends upon the control of the court over

the parties, by reason of their presence or residence.'' (Note to Story's Eq. Jur., 14th ed., sec. 93.)

It is clear that the action is one in which the judgment affects personal rights. It is not directed against the *res,* but rather the person to determine a personal liability for an indebtedness, and the *res* was never impounded by court process. Substituted service of summons in this case did not give the court jurisdiction to enter the judgment, and therefore it is without avail.

Accordingly, the judgment is reversed and the cause remanded to the district court of Fergus county, with directions to set it aside.

*Reversed and remanded.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MYERS, STARK and MATTHEWS concur.