SECOND NAT. BANK OF GRAND FORKS *vs.* WILLIAM C. SPROAT.

Argued July 20, 1893.    Affirmed Sept. 8, 1893.

No. 8131.

**A Contract Construed.**

Plaintiff had in its possession collateral security for a debt due from a third party, who also owed the defendant. *Held*, that an agreement by the parties in interest that any sum received upon such collateral security in addition to the indebtedness first secured thereby should be applied on the debt due from defendant operated as an equitable assignment to defendant of such surplus, if any there should be.

**Creditor Holding Chattels as Security—Duty in Selling.**

Where a creditor held as security certain pine logs, which it was agreed that he should manufacture into lumber, dispose of the same, and apply the net proceeds upon the indebtedness so secured, *held* to be the duty of such creditor to use reasonable diligence to secure the best net results, and that it would devolve on him to account for the proceeds, and to show what expenditures were necessarily or reasonably incurred in the management of the trust.

**Immaterial Errors.**

Certain alleged errors *held* without prejudice, in view of the state of the evidence upon the issue in respect to the balance due defendant derived from the collateral security.

Appeal by plaintiff, the Second National Bank of Grand Forks from an order of the District Court of Polk County, *Ira B. Mills,* J., made September 16, 1892, denying its motion for a new trial.

The defendant, William C. Sproat on January 14, 1887, borrowed of Howes & Dwyer two hundred and fifty dollars and made and delivered to them his promissory note by which he promised to pay that firm or order on June 1, 1887, that amount with interest. Howes & Dwyer on the same day sold and indorsed the note to the plaintiff and waived protest and notice.   The bank brought this action thereon to recover the contents.

Defendant answered that on March 28, 1887, Howes & Dwyer were otherwise indebted to the bank about $1,800, and as security for its payment had delivered to the bank six notes belonging to the firm and also 419,000 feet of pine saw logs on Sandy River in Beltrami County.   That on that day, defendant sold and delivered to Howes & Dwyer three hundred and fifty bushels of No.

1 hard Spring wheat and in consideration thereof the firm agreed to pay his note and obtain it from the bank when it fell due, and surrender it to him. It was also agreed orally on that day between the bank, the firm and the defendant that any surplus realized by the bank from the six notes and the sawlogs over the debt for $1,800, should be applied to pay the note for $250 given by Sproat. Afterwards, J. W. Howes, one of the firm, gave Sproat a written order to A. W. Clark, the cashier of the bank, as follows:

Grand Forks, May 23, 1887.

A. W. Clark, Cashier;—

Pay to W. C. Sproat a sufficient sum to pay his note endorsed by me, out of collaterals now in your hands over the amount that is required to satisfy your claim.

J. W. Howes.

This order Sproat delivered to the bank. He claims the bank realized out of the notes and sawlogs more than sufficient to pay the $1,800 and his note for $250, and that his note is thereby paid. On the trial, the contest was over the question what amount the bank realized out of the sawlogs. It drove them down to St. Hilaire and there had them sawed into lumber. Defendant had a verdict. The plaintiff moved for a new trial. Being denied, it appeals.

*A. C. Wilkinson* and *Bangs & Fisk,* for appellant.

No evidence was offered by the defendant to prove the amount of the expenses incurred by the bank in converting these logs into lumber and selling the same, or to prove the net receipts from said collaterals, but he was permitted to introduce testimony over plaintiff's objections, tending to show what these expenses would be with the exercise of reasonable diligence, and after showing the gross receipts by plaintiff from these collaterals and the six notes, rested his case. The plaintiff's contention was, and is, that there was no proof of payment as alleged; that to constitute payment there must have been an actual application on the note; that the burden of proof rested with defendant to show that the proceeds of these collaterals were in excess of the Howes & Dwyer indebtedness to the bank, and that in this he wholly failed; that the

actual net proceeds of said collaterals and not what they might have been, should be the basis for computation.

*William Watts*, for respondent.

VANDERBURGH, J. Defendant made the note in suit payable to Howes & Dwyer, who got the same discounted at the plaintiff's bank, and the defendant sold and delivered wheat to the payees, Howes & Dwyer, in consideration of which they were to provide for the payment of the note to the bank; and the defense set up in the answer, in substance, is that the plaintiff bank held certain collateral securities for indebtedness to it of Howes & Dwyer, the surplus proceeds of which over such indebtedness it was mutually agreed should be applied by the bank to the payment of this note, and it is alleged that, after such agreement was made, Howes & Dwyer paid on their indebtedness to the bank $2,095 by the sale and transfer to it of certain pine logs at that price, and that the plaintiff bank has realized from the collaterals in its possession sufficient to pay the note, which defendant is entitled to have applied in satisfaction thereof. The pleading is loosely drawn, but the purpose of the pleader was evidently to set up an equitable assignment to defendant of the collateral securities in question, subject to the indebtedness of Howes & Dwyer, and to allege that sufficient had been collected applicable to the plaintiff's note in suit to satisfy the same. The plaintiff having delayed making any objection till the trial, every reasonable intendment will be made in support of the sufficiency of the pleading. The decision of the court sustaining it will not now be disturbed.

Upon the trial, however, it turned out that instead of a sale of the pine logs, as alleged in the answer, it had been agreed between Howes & Dwyer and the plaintiff that the logs should be driven down the stream to which they had been hauled, and manufactured into lumber, and the lumber marketed and sold by the plaintiff, and the surplus proceeds over the expenses necessarily incurred should be applied upon their indebtedness to the bank; and the case was tried on that theory, by the consent of all parties, and the variance waived.

It was the duty of the plaintiff to use reasonable diligence in the manufacture and sale of the lumber to secure the best net results,

and it would devolve on it to render an account of its receipts and expenditures, and the burden would, of course, rest upon it to show what expenditures were necessarily or reasonably incurred in the management of the trust. There was no error in the charge on this point. In respect to certain other exceptions, as will appear, the matters practically in issue are brought within so narrow a compass that the alleged errors could not have had any effect upon the result.

The evidence tends to show that the plaintiff received:

| | | |
|---|---:|---:|
| As the proceeds of the lumber, the gross sum of.... | | $5,507 99 |
| And from the proceeds of the collateral notes, the further sum of.............................. | | 821 50 |
| Total .................................. | | $6,329 49 |
| Indebtedness of Howes & Dwyer to the plaintiff ............................ | $1,856 28 | |
| Defendant concedes the amount of expenditures by plaintiff, shown by Exhibit E.. | 2,770 00 | |
| Other items of expense established by the evidence ........................... | 647 90 | $5,274 18 |
| Balance in plaintiff's possession subject to disputed claims testified to by Lander.......... | | $1,055 31 |

He testified that he paid out in behalf of the bank the amounts appearing upon three pay rolls for labor in manufacturing the lumber, viz. $267.82, plus $388.91, plus $632.34, amounting to $1,289.-07,—more than sufficient to exhaust the above balance. They all rest upon the same evidence, and stand or fall together.

In the light of the cross-examination of Lander, the plaintiff failed to establish that the amount of these pay rolls was a reasonable and proper charge. It does not appear that he had personal knowledge of the fact that the wages claimed to have been paid by him were earned. His evidence was hearsay. The time of the men was kept by another person, and Lander gathered the amount which he says he paid from a book kept by such other person. The case is not helped out by the vague and indefinite evidence of Howes on the matter. It was insufficient to verify the record of the timekeeper or to show how much the men earned, how long they worked, or at what wages they were employed. It is fair to infer that the jury rejected these claims, as they should properly have

v.55m.—2

done, and they might well scrutinize carefully the account of the plaintiff's expenses as presented by it, in view of the fact that they exceeded in amount all the proceeds of the logs and lumber.

Apart from the pay rolls and the claims for insurance upon the mill, which we think was properly rejected by the trial court, the balance of the account appears to be reasonably established by the evidence, and was presumably allowed by the jury, unless in their judgment, upon the evidence, a reduction of Lander's claim for his personal services was warranted. But it is obvious that it is unnecessary to investigate this claim; for, if the pay rolls were allowed by the jury, the balance in plaintiff's possession, as we have seen, would be thereby exhausted, and if they were disallowed, as we must presume they were, then there was enough to pay all the rest, including defendant's claim, which is all he asks. But we think, upon the evidence, it was fairly a matter for the determination of the jury whether Lander's claim should not have been reduced. The jury could reasonably estimate the time he was employed and the value of his services upon the evidence given upon cross-examination; and this was all the instruction of the court on that question meant, and the jury could hardly understand it otherwise.

Order affirmed.