# A. SLIMMER AND ANOTHER v. STATE BANK OF HALSTAD.[1]

### November 3, 1916.

### Nos. 20,100—(49).

**Negotiable instrument — equitable assignment.**

1. A mortgagor sold to a third person certain mortgaged property and received in payment therefor a check upon a bank for the purchase price payable, by an indorsement on the face thereof, to the mortgagee as his interests might appear. A controversy arose between the mortgagor and mortgagee as to the application of the money; the mortgagee claimed that it should be applied in payment of a debt of the mortgagor not secured by the mortgage, while the mortgagor and also the purchaser of the mortgaged property claimed that it should be applied in discharge of the mortgage debt. The officers of the bank were informed of the check and an amount sufficient for that purpose was reserved for its payment; it was finally agreed between the parties, with the knowledge of the bank, that the fund should be paid to the mortgagee, to be applied upon the mortgage debt. It is *held* that the agreement amounted to an equitable assignment of the fund to the mortgagee; and that a right thereto passed to a subsequent transferee of the promissory notes so secured.

**Same — indorsement as notice.**

2. The check referred to had written upon its face the words: "To be applied on paper held by B. B. Larson if found correct." Larson was the mortgagee. It is *held* that the indorsement was notice to an assignee of the check of the rights of Larson, and the plaintiffs, such assignees, are not *bona fide* holders of the same.

[1] Reported in 159 N. W. 795.

**Verdict supported by evidence.**

> 3. The evidence sustains the verdict and there were no errors in the instructions of the court to the jury.

Action in the district court for Ramsey county by the partners composing the firm of Slimmer & Thomas against the State Bank of Culbertson to recover $1,760 upon a check drawn upon defendant bank by one Nacey in favor of C. C. Armstrong. Thereafter the amount in dispute was deposited in court by defendant and the State Bank of Halstad was substituted as defendant. The case was tried before Dickson, J., who when defendant rested denied plaintiffs' motion for a directed verdict in their favor, and a jury which returned a verdict in favor of defendant. From an order denying their motion for judgment notwithstanding the verdict or for a new trial, plaintiffs appealed. Affirmed.

*Durment, Moore, Oppenheimer & Haupt,* for appellants.

*F. H. Peterson,* for respondent.

BROWN, C. J.

The evidence in this case discloses the following facts:

One Armstrong was operating a cattle ranch in the state of Montana. He purchased certain cattle and horses from B. B. Larson, who was president of defendant bank, and, to secure the payment of the promissory notes given for the purchase price, executed to Larson a chattel mortgage upon the horses and cattle so purchased. Armstrong was also indebted to plaintiffs in a large sum for cattle purchased from them. The cattle and horses were so purchased to be turned out on the range and fattened and prepared for the market. The sale by Larson occurred in 1902, and the promissory notes given for the purchase price are described in the record as "6-E notes." From 1902 to 1906, Armstrong suffered losses to his stock from the elements and for lack of range feed during the winter seasons, and Larson advanced and loaned to him money to supply necessary hay, grain and other feed. At the time involved in this action he was indebted to Larson on this account in a large amount, for which promissory notes were also given, and are referred to in the record as "running expense notes." In August, 1906, Armstrong sold to one Nacey some of the horses which were covered by the Larson mortgage for the agreed

price of $1,760. Larson knew nothing of the sale until after the bargain had been made, and when he learned of the fact he interposed an objection upon the ground that the price agreed upon by Armstrong and Nacey was too low. His objection was of no avail and the sale was closed. Nacey then drew his check, in payment for the horses, on the First National Bank of Culbertson, Montana, for $1,760, payable to Armstrong. Nacey knew of the mortgage and of Larson's interest thereunder, and he wrote across the face of the check the words: "To be applied on paper held by B. B. Larson if found correct." This was equivalent to an express direction to the bank to pay the money to Larson as his interests might appear. The bank was advised of the check, in fact the transaction resulting in the issuance thereof in the manner stated took place at the bank in the presence of one of its officers, and an amount of money equal to the check was set aside from Nacey's account and held by the bank for application in payment of the check whenever the parties should agree to whom it should be paid. No agreement, satisfactory to the bank for its protection, was ever reached, and the check was by Armstrong, some time about March 1, 1912, assigned and transferred to plaintiffs. Plaintiffs thereafter brought an action in the district court of Ramsey county, against the drawee, the Culbertson Bank, to recover thereon. Prior to this, defendant, State Bank of Halstad, to which Larson had transferred the notes secured by the chattel mortgage on the horses, had also brought an action, in the district court of Clay county, to recover against the Culbertson bank the amount of the check. The Culbertson bank being thus confronted with two actions to recover the same money, to protect itself from double liability made an application to the court below for permission to deposit the money in the court, to be contested for by plaintiffs on the one side and defendant on the other. The application was granted, and thereafter the action was conducted between the parties named as the sole contenders for the fund. Slimmer v. State Bank of Halstad, 122 Minn. 187, 142 N. W. 144. Other facts will be stated in connection with points decided. Enough has been said to give a general understanding of the case. The action proceeded to trial before the court and jury, resulting in a verdict for defendant. Plaintiffs appealed from an order denying their alternative motion for judgment or a new trial.

1. It is contended by plaintiffs that the trial court erred in denying

their motion for a directed verdict. In this we are unable to concur. The parties are in dispute as to what took place at the time the check was issued, and this dispute presented one of the principal issues on the trial. It appears from the record that plaintiffs claimed, and offered evidence accordingly, that the check was deposited with one Bruegger to be held by him until Larson should come forward with evidence that something was still due on the notes secured by the chattel mortgage, and that Larson was required to do this within a reasonable time; that he failed to do so, and therefore lost any right he had to the check or the proceeds thereof. This claim was contradicted by Larson. He testified that he knew nothing about Bruegger in the transaction, or that a check had been issued with the notation on the face thereof, heretofore referred to, and left with Bruegger. And he further testified that he laid claim to the proceeds of the horse sale, the money in question, and that the parties were in dispute as to whether the same should be applied upon the mortgage notes, or the expense account notes; he contended that it should be applied upon the expense account notes while Armstrong insisted that it should go upon the chattel mortgage debt. It further appears that Nacey, the purchaser of the horses, was aware of the controversy between Armstrong and Larson, and the jury were justified in finding that he indorsed upon the check the words referring to the rights of Larson for his own protection. The check was so issued on August 10, 1906. Larson further testified that in October following he accepted the condition imposed by Armstrong as to the application of the money, and agreed with Armstrong and Nacey that it should be credited upon the chattel mortgage indebtedness, and they in turn agreed that the money should be paid over to Larson for that purpose. The parties then proceeded to the bank and informed the officers thereof of the agreement. Larson asked for the money, and the cashier of the bank asked for the production of the notes, to the end that the amount might be indorsed thereon. Larson and the bank officers were on unfriendly terms, and the money was not paid over to Larson, though Larson produced the notes. The refusal of the cashier to pay it over was evidently based upon a remark by Armstrong that the check had been attached. Larson thereafter made several

efforts to get the money from the bank but was unsuccessful. The check had not been attached and the bank retained the money until it was deposited in court in this action as heretofore stated.

The evidence tending to support the contention of the respective parties presented an issue of fact and was properly submitted to the jury. The court charged the jury that if they found the claim of plaintiffs to be true, and that the check by agreement of the parties was deposited with Bruegger, to be held by him for a reasonable time to permit Larson to make known what amount was due him on the mortgage notes, and that Larson failed to make known his claim within a reasonable time, a verdict should be returned for plaintiffs. But if they found that claim unfounded, and they believed the testimony of Larson, to the effect that in October, following the issuance of the check, the parties agreed that the money should be paid to Larson to be applied on the mortgage debt of which the bank was informed, then that their verdict should be for the defendant. We are clear that the court was right in so instructing the jury. The evidence was flatly contradictory in substantially all material respects and the claims of the respective parties presented issues of fact; neither was entitled to a directed verdict. Plaintiffs' claim was not conclusively shown. If the evidence presented by defendant be true, a question for the jury, there was an express appropriation of this fund to the payment of the Larson notes. It is not material that the agreement was not in writing. Hurley v. Bendel, 67 Minn. 41, 69 N. W. 477. The transaction, participated in by all the parties in interest, with notice to and acquiescence of the bank, amounted to an equitable assignment of the fund, vesting in Larson a present perfect title to the money. Second Nat. Bank of Grand Forks v. Sproat, 55 Minn. 14, 56 N. W. 254; Hutchins v. Watts, 35 Vt. 360; McIntyre v. Hauser, 131 Cal. 11, 63 Pac. 69; 4 Cyc. 43. It follows, therefore, that there was no error in refusing plaintiffs' request for a directed verdict.

2. The court further instructed the jury that plaintiffs occupied the position and stood in the shoes of Armstrong, with no better rights to the fund, and that defendant occupied the position with the rights of Larson. The contention of plaintiffs that in so charging the jury the trial court erred, is not sustained. It is not, nor can it well be claimed that plaintiffs' rights are in any way superior to those possessed by Armstrong, or that

plaintiffs are innocent holders of the check. They acquired the check with notice of Larson's rights, at least the check on its face bore an indorsement indicating that Larson had some interest in the money to be paid thereon, and they were thus charged with notice of whatever those rights were and are not innocent holders. But the claim most seriously urged by plaintiffs upon this branch of the case is that the record fails to show that defendant bank is entitled to assert the rights of Larson, even conceding the agreement between Larson, Nacey and Armstrong to apply the fund in payment of the mortgage debt. And it is contended that the rights thus acquired by Larson, whatever they have been, did not attach to the notes or pass therewith upon the subsequent transfer thereof to defendant. This contention entirely overlooks the existence, force and effect of the chattel mortgage. In fact counsel insisted on the oral argument that, since the chattel mortgage was not received in evidence, it is not a factor for consideration in determining the rights of the parties. In this counsel is in error. Though the mortgage was not formally received in evidence, the fact of its existence and to some extent the contents thereof was testified to by the various witnesses, without objection from either party, and was the subject matter of a portion of the instructions of the court to the jury. In fact witness Slette, a witness produced by plaintiffs, testified concerning the mortgage, and to the effect that Nacey, the purchaser of the horses and who gave the check in payment therefor, wanted the horses released of the mortgage. He further testified that "the mortgage had a proviso in it that for a certain amount paid on the mortgage, the horses were supposed to be released, and Armstrong claimed that this amount had been paid and that the horses should be released. The words, 'to be applied on paper held by B. B. Larson if found correct,' referred to that mortgage covering the horses." In view of this state of the record the fact that the mortgage was given, and was an element in the negotiations between the parties, and the incumbrance Nacey was seeking to have released and discharged before relinquishing the check, cannot be ignored. It was the only basis on which Larson could lay a valid claim to the money, the release of which was the condition upon which Nacey gave the check. And if, as claimed by Larson, the truth of which the jury by their verdict affirmed, the parties finally agreed, with the acquiescence of the bank, to apply the amount of the

check in payment of the mortgage notes, the agreement became attached to the mortgage and notes and as an incident thereof passed to defendant by operation of law. Tweto v. Horton, 90 Minn. 451, 97 N. W. 128. The case of Laughlin v. Larson, 27 S. D. 376, 131 N. W. 304, is not in point. The decision in that case turned upon the fact that the creditor there asserting a claim to a particular fund, which the debtor had directed a servant to pay to him, which direction was subsequently revoked, had no lien upon the property, from a sale of which the fund arose. In the case at bar the creditor, Larson, had a lien upon the property under the chattel mortgage, to discharge which the agreement for an application of the money was made.

What has been said covers the case on the merits and leads to an affirmance. We discover no error in the instructions of the court, the evidence supports the verdict, and the order appealed from must be and is affirmed.

Order affirmed.