AETNA LIFE INSURANCE COMPANY of Hartford, Plaintiff, Appellee, v. HELEN C. MORLAN, Defendant, Appellant, LETTA M. DUTTON, Defendant, Appellee.

No. 43101.

DECEMBER 17, 1935.

REHEARING DENIED APRIL 8, 1936.

Putnam, Putnam, Fillmore & Putnam, for defendant-appellant.

Carr, Cox, Evans & Riley, for plaintiff-appellee.

Stipp, Perry, Bannister & Starzinger, for defendant-appellee.

ANDERSON, J.—This is an action in equity arising on a petition of interpleader. The plaintiff is a life insurance company. The appellant, Helen C. Morlan, the widow of the insured, and the appellee, Letta M. Dutton, a sister of the insured, are rival claimants to the proceeds of a life insurance policy on the life of Ora S. Morlan, the husband of Helen C. Morlan, appellant, and brother of Letta M. Dutton, the appellee. The appellant in her

brief and argument makes the statement that "the controlling evidence is undisputed. The mental incompetency of Ora Morlan during his illness is the only disputed point and under the law this becomes unimportant." And the appellee makes the statement in her brief and argument that "there is no conflict in the testimony except on the question as to the mental competency of the insured Ora S. Morlan." But notwithstanding these statements contained in the briefs, we have an abstract of record consisting of 160 pages, an amendment thereto consisting of 61 pages, a denial of the amendment, and a certification of the transcript consisting of 600 pages. From the record as submitted to us, we gather the following facts, which we deem material to the disposition of the matters submitted to us on this appeal:

The first wife of Ora S. Morlan died about April 1, 1930. Some few years prior to her death Ora took out a policy of insurance, the proceeds of which are here in controversy, in which his first wife was named as beneficiary. After the first wife's death, Ora made his home with his father and mother and sister, Letta M. Dutton, the appellee, in appellee's home until the date of his second marriage, July 31, 1931. Ora Morlan was in the automobile business in Des Moines during all of the time involved in this controversy, until his death. Prior to the death of his first wife he had borrowed from his father and mother the sum of $4,700. The father and mother were aged people making their home with their daughter Letta M. Dutton, the appellee. They had no property, after loaning the said sums to their son Ora, other than the promissory notes representing said loans. The mother of Ora S. Morlan and Letta M. Dutton had carried a policy of insurance on the life of Ora's first wife, and collected the sum of $500 thereon. This money was loaned to Ora S. Morlan on or about April 30, 1930, and at that time Letta M. Dutton was designated as beneficiary in the policy of insurance in controversy; and it is established without controversy that at that time there was an agreement that the policy should stand as security for the loan of $500, as well as the prior loans totaling $4,700 and as a part of the transaction it was also agreed that Letta M. Dutton should provide a home for her parents as long as they lived. The beneficiary was designated, as we have noticed, and the policy delivered to Letta M. Dutton. Letta con-

tinued to make a home and furnish support for her father and mother until her mother died, and since that time has continued the care and support of her aged father in her home. The father, A. D. Morlan, collected $1,000 on the insurance policy covering his wife's life. This money was also loaned to Ora upon his assertion and agreement that his life insurance policy would be security therefor. Later, and on November 10, 1932, Ora induced his sister Letta to let him have the policy for the purpose of borrowing some money thereon to meet a premium payment upon the same, agreeing to return it to her as soon as he had consummated the loan. He never did return the policy. Letta continued to watch the payment of the premiums on the policy and arranged with a brother, at least on two occasions, to attend to the payment of the premiums and keep the policy from lapsing. The brother paid out at the request of Letta $105 on the premiums, and paid the last premium due on the policy prior to Ora's death. This, however, was returned to him, under the terms of the policy, because of the illness and incapacity of Ora. Prior to his marriage to appellant, Helen C. Morlan, Ora had borrowed $2,000 from her for use in his business. Later, his second wife, Helen, signed a note with him at a bank for $2,500, and she claims that in 1931, her husband, Ora, agreed to secure her with his life insurance, and she also claims that some time later and after her husband had secured the policy from his sister on November 10, 1932, he delivered the policy to his wife, Helen, but there was no assignment of the same and no change of beneficiary, although the policy on its face showed that it was payable to Letta M. Dutton, as beneficiary. Ora Morlan was stricken with a fatal illness in the fall of 1933, and his life was despaired of. On December 16, 1933, his wife, Helen, having discovered that his sister Letta M. Dutton was named as beneficiary in the policy, spoke to Letta M. Dutton about it, and suggested that the beneficiary should be changed. Mrs. Dutton promptly told her it should not be changed, and told her of the arrangement and agreement among the members of the family at the time she, Letta, was named as beneficiary, and that she and her father were depending upon the insurance to repay the money that Ora had borrowed from his father, and to assist in the care and support of the father and mother. After Helen had been apprised of the situation and the

agreement, she obtained from her husband, Ora, on December 20, 1933, his signature to a form changing the beneficiary in the policy. Ora died on March 5, 1934.

The appellant, Helen C. Morlan, claims that she actually advanced to her husband cash amounting to approximately $3,000 and that in consideration thereof her husband, Ora, assigned and delivered the policy to her more than a year prior to his death. However, any such advancements or loans were made prior to the time that the policy was delivered to her some time after November 10, 1932. The record as to the delivery and assignment of the policy to the appellant consists in her testimony that her husband, Ora, tossed the policy in her lap and said, "there is your insurance, sweetheart." At that time the policy bore an indorsement "beneficiary changed" and there was no written assignment thereon. At that time, as we have noticed, the beneficiary named in the policy was the appellee, Letta M. Dutton. There is also testimony in the record that, at the time part of the money claimed to have been loaned by Helen to her husband was turned over to him, capital stock in the corporation engaged in the automobile business in which her husband was president was issued to her, and the appellee claims that the advancement by Helen to her husband of $2,000 was in payment for said stock, and not as a loan. Appellee also claims that there is evidence in support of the claim that Helen received from her husband an expensive automobile, some other items of personal property, and a considerable amount of cash subsequent to the time that Helen claims she loaned the money to her husband. All of the money claimed to have been advanced by Helen to her husband, however, was advanced prior to the time that the insurance policy was delivered to her. After the death of Ora, the controversy arose as to who was entitled to the proceeds of the policy of insurance. The plaintiff, insurance company, filed a petition of interpleader in the district court of Polk county, Iowa, and paid the money due under the insurance policy into court. Both Helen C. Morlan, appellant, and Letta M. Dutton, appellee, filed answer and cross-petitions in said action, each claiming the proceeds of said life insurance policy. The matter was submitted to the trial court, and a finding and decree was entered finding the equities with the appellee, Letta M. Dutton, dismissing the cross-petition of Helen C. Morlan, and decreeing that the

clerk of court pay over to the appellee, Letta M. Dutton, the proceeds of said life insurance policy, less costs and attorney fees of $200 allowed the plaintiff, insurance company, and entered judgment against the appellant, Helen C. Morlan, for the amount of the costs, including the said allowance of $200 attorney fees for plaintiff's attorney. From such finding and decree, Helen C. Morlan has appealed.

The appellant rests her case upon the rights claimed to have been acquired at the time the policy was delivered to her some time in November, 1932, and also upon rights claimed to have been acquired by the change of beneficiary executed by the insured, Ora S. Morlan, in December, 1933. The appellee contends that no rights or equities accrued to appellant, Helen C. Morlan, through either of the claims made by appellant. Appellee pleads that Ora was mentally incompetent at the time it is claimed he executed the change of beneficiary in December, 1933. The trial court found that the insured was mentally incompetent to change the beneficiary at the time it is claimed he executed the instrument changing the beneficiary. There is ample evidence in the record upon which to base this finding, and we are satisfied with the determination of this question as made by the trial court. We will not recite at length the testimony upon which this finding is based. However, it is supported by the testimony of two physicians, and many other competent witnesses. The testimony shows that at the time the change of beneficiary was claimed to have been executed, Ora Morlan had been ill for several months with a fatal disease. He was under the influence of morphine. He did not know his own father. He did not know his wife's name. He had not been able to recognize his close and intimate friends. He had lain in a coma all day. One of his attending physicians testified that he "felt he was gone, his eyes were restless, wandering, glazed"; and on the following day one of the physicians made a written statement, which was introduced in evidence by the appellant without objection, in which he said, "It is my opinion that Mr. Morlan is not mentally able at the present time, to perform any legal business. For the past month he has had a marked disturbance in vision so that he has been unable to read, and lately also has had great difficulty in identifying or recognizing individual persons. In the past week he has been stuporous a great portion of the time. He was

last seen today, at which time Mrs. Morlan was informed that, in my opinion, Mr. Morlan was not mentally capable of performing any further legal duties.'' The signature of the insured appearing upon the instrument changing the beneficiary is illegible and indicates that a hand other than that of Morlan guided the pen across the paper to trace the signature. The evidence of the appellant as to the competency of Mr. Morlan is unimpressive and carries little, if any, weight.

It is well settled that where a valuable consideration in money or services is paid for the naming of a beneficiary in a life insurance policy, an equitable interest in the policy is created, and the beneficiary cannot thereafter be changed. And it is also well settled that where an equitable interest does not exist, a change of beneficiary can be made or a subsequent assignment made, if the policy reserves the right to so change or assign. Beed v. Beed, 207 Iowa 954, 222 N. W. 442, 444; Sovereign Camp v. Russell, 214 Iowa 39, 241 N. W. 395; Jacobson v. New York Life Ins. Co. 199 Iowa 770, 202 N. W. 578; Potter v. Northwestern Mutual Life Ins. Co., 216 Iowa 799, 247 N. W. 669; Shuman v. Supreme Lodge, 110 Iowa 480, 81 N. W. 717; Carpenter v. Knapp, 101 Iowa 712, 70 N. W. 764, 38 L. R. A. 128.

■■ The question determinative of this case is whether or not Letta M. Dutton, the appellee, acquired such an interest in the policy of insurance here involved as to foreclose the right of the insured to change the beneficiary or assign the policy, prior to the acquiring of any interest therein by Helen C. Morlan, the appellant. The appellant contends that Mrs. Dutton, the beneficiary named in the policy, acquired no such interest. If she did acquire such an interest, then any interest of Helen C. Morlan was acquired subsequent to the vesting of the equitable interest of Mrs. Dutton, and Mrs. Dutton's claim would be prior and paramount to that of Mrs. Morlan. The appellant's claim is that Mrs. Dutton individually parted with no consideration at any time, and could not acquire an equitable interest in the insurance policy. Appellant contends that the money consideration, if any, was contributed by the father and mother of Mrs. Dutton, and Mrs. Dutton cannot base her claim to an equitable interest on account thereof. We are constrained to hold that under this record such contention is not sound. The father and

mother of Mrs. Dutton were aged; they were making their home with Mrs. Dutton and received their support and maintenance from her. It was undisputed that the agreement entered into at the time Mrs. Dutton was named as beneficiary provided that Mrs. Dutton was to continue to furnish support and care to the father and mother of herself and the insured during their lifetime, and also that the policy should stand as security not only for the $4,700 previously advanced by the parents to the insured, but also as to the advancement of $500 made at the time of the change of beneficiary, and also the $1,000 loaned to the insured at a subsequent date. In this situation, Mrs. Dutton stands in the position of a beneficiary with an equitable interest in her own right, and also as trustee for her father, A. D. Morlan, and such interest was created and existed prior to the time that the appellant claims to have acquired any interest in the policy. In the case of Beed v. Beed, supra, we held that:

"Ordinarily the selection of the beneficiary is a matter of voluntary action on the part of the insured, and no vested interest in the policy is acquired by the beneficiary, and a change may be made therein at the option of the insured with the consent of the company, and ordinarily the consent of the beneficiary is not necessary. But there is an exception to this general rule where, as in the instant case, the policy is taken out for and in behalf. of a beneficiary for a specific purpose, either under an agreement between the parties that the beneficiary shall not be changed, or under such circumstances as to render it inequitable to permit such change to be made. Where a policy of insurance is taken out for the benefit of a creditor of an insured, and where there is an agreement between the parties that there shall be no change in the beneficiary, a court of equity will enforce the rights of the original beneficiary as against those of a new beneficiary. This is especially true where there is evidence of an agreement between the insured and the original beneficiary that such change shall not be effected at least until the creditor's claim against the insured shall have been satisfied in full. This rule is recognized in the Jacobson case and in many authorities cited therein."

The appellant further contends that she is a subsequent assignee of the policy in question and a bona fide purchaser for

value without notice of any prior interests or equities therein, and that Mrs. Dutton is barred and estopped from asserting her claim as against the interests of the appellant thus obtained. But the trouble with this contention is, first, that she cannot claim to be a bona fide purchaser as against the vested interest of the named beneficiary, where no present consideration was paid for the claimed assignment. She does not claim to have advanced any present consideration for the assignment, nor did she make any subsequent advancements. The attempted change of beneficiary to the appellant having been held invalid by reason of the incompetency of the insured, she must rest her claim, if any she has, upon the simple act of the delivery of the policy to her, and it is very doubtful whether such delivery, regardless of any existing equities, would constitute a valid assignment of the policy as against the beneficiary named therein. An estoppel as against the appellee is not pleaded, and even if it was the record would not support it. It must be noted in this connection that the appellant was in possession of the policy more than a year with a beneficiary other than herself named therein, and with no assignment thereof, and was advised in detail as to the interest and equities of the appellee therein, prior to the time that she attempted to have the beneficiary changed, and she certainly could not acquire any interest in the policy thereafter as against the vested interest of the appellee. Moreover, the policy had been obtained from Mrs. Dutton by the assured for a special purpose only, and that was to obtain a loan thereon for the purpose of paying the maturing premium. He had agreed to return the policy to the appellee as soon as it served the special purpose for which it had been procured. And upon being asked about its return on repeated occasions by Mrs. Dutton, said that it would be "right up". Obtaining the policy under these circumstances would not divest the rights of Mrs. Dutton therein. New Albany Nat. Bank v. Brown, 63 Ind. App. 391, 114 N. E. 486; Goodwin v. Massachusetts L. & T. Co., 152 Mass. 189, 25 N. E. 100; Jennings v. Gallagher, 103 Vt. 169, 152 A. 802; Exchange Bank v. Insurance Company, 187 Iowa 253, 174 N. W. 260; Jones on Pledges and Collateral Security, sections 41, 44.

At the time the policy was delivered to the appellant, she had advanced all of the money and credit that she ever did ad-

vance, and the only thing she did thereafter was to renew the promissory note which she had signed with her husband at the bank. She advanced no present consideration depending upon the claimed assignment to her. Manifestly she can have no interest by reason of her claim as an innocent purchaser and holder for value. Mrs. Dutton did not know and could not have known where the policy was, or that it had been delivered to the appellant. Mrs. Dutton had no opportunity to advise the appellant of her interest in the policy of insurance until the appellant suggested to her, in November, 1933, that the beneficiary should be changed, and at that time was fully informed as to the interest of Mrs. Dutton in the insurance policy. It is obvious from the record that the appellee was the beneficiary named in the policy, and that she had such a vested interest as would support her rights in equity, and as would prevent a change of the beneficiary or an assignment of the policy. Under the agreement, she was made beneficiary in the policy for the purpose of protecting her in the outlay of the necessary funds for the support and maintenance of her father and mother. She had carried out the contract on her part. She was also made beneficiary as trustee for her father with the policy as security for the money he had advanced to the assured. Mrs. Dutton had also caused certain of the premiums due upon the policy to be paid. In addition to this, $1,500 in cash had been advanced to the assured by his father relying and depending upon the insurance policy as security for the repayment of the same, and this money was advanced at the time and subsequent to the time that the appellee was named as beneficiary, and as a part of the consideration therefor.

■■■ The general rule is that one who acquires property as security for antecedent debts only is not a bona fide holder for value as against pre-existing equities. Empire State Trust Company v. Trustees of William F. Fisher & Co., 67 N. J. Eq. 602, 60 A. 940, 3 Ann. Cas. 393.

We find no cases holding that a prior beneficiary with a vested interest can be deprived of such rights by a subsequent assignee charged with knowledge of such facts, and especially is this true when the assignee gave no present value for the claimed assignment.

We are constrained to hold that the appellee, Letta M. Dutton, was named as beneficiary in the policy of insurance in controversy for a valuable consideration and before any possible rights, equities, or interests accrued in behalf of the appellant, Helen C. Morlan; and that such rights, coupled with an interest created existing and controlling equities in behalf of Letta M. Dutton; and that the assured thereafter was without power or right to assign the said policy or change the beneficiary therein. Such was the finding of the trial court, and such is the final conclusion of this court.

■■■ There is further contention on the part of appellant that judgment should not have been entered against her for the costs, including a $200 attorney fee taxed in favor of the plaintiff. The order of the trial court taxing this attorney fee was entered long prior to the final judgment and decree on the issues joined between the appellant and appellee. No appeal was taken therefrom, and we are of the opinion that such order is not before us for review. It necessarily follows that the finding, judgment, and decree of the trial court must be, and it is hereby, affirmed.—Affirmed.

KINTZINGER, C. J., and PARSONS, HAMILTON, POWERS, MITCHELL, RICHARDS, ALBERT, and DONEGAN, JJ., concur.