IN RE ESTATE OF CARLTON H. PAUL.

P. H. STEPHENSON et al., Appellants, v. MARK M. SHELDON, Administrator, et al., Appellees.

No. 45783.

APRIL 7, 1942.

Nichols & Nichols, for appellants.

Eaton & Mauk, for appellees.

MILLER, J.—Claimants filed a claim for $2,210 for room and board furnished the decedent herein during one year and ten months immediately preceding his death on July 24, 1938. The administrator resisted the claim. Trial was had resulting

in a verdict in favor of claimants in the sum of $1,250. Judgment was entered accordingly. Claimants then made application for an order to require the administrator to pay the judgment. The administrator resisted the application, asserting that he had collected $4,192.06 from the New York Life Insurance Company on a policy of life insurance, from which he had paid medical and funeral bills and court costs; that decedent left surviving him as his only heir his son, 20 years of age at the time of death, and the balance of the insurance proceeds were not available to pay claimants' judgment. The son of the decedent filed a petition of intervention which adopted the pleadings of the administrator, asserted that the intervener was entitled to the insurance proceeds, prayed that the application of claimants be dismissed and that intervener be awarded the insurance proceeds. The claimants replied to such contentions by asserting that in December 1937, demand was made for payment of board, room, and care then being furnished decedent, decedent had the designation of beneficiary in said life insurance policy changed from his son to his estate, delivered the policy to F. B. Steele, advised him that the policy had been orally assigned to claimants, and instructed Steele that he was to hold the policy until time of death, when the proceeds thereof were to be applied to the amount of indebtedness then due claimants; claimants knew of the arrangement, agreed to it, relied upon it, and are entitled to enforce it.

By agreement of the parties, the matter was transferred to equity. Trial was had. The court determined that claimants had failed to prove by clear and convincing testimony that there was any agreement or assignment of the policy of insurance for the benefit of claimants; that, under the provisions of section 8776 of the Code, 1935, the proceeds of the policy were not available for the payment of claimants' judgment and were the property of the intervener. Accordingly, decree was entered denying claimants' application and awarding the funds in the hands of the administrator to the intervener. The claimants appeal.

The decisive question presented by this appeal is whether claimants established by clear and satisfactory evidence that the decedent made an arrangement which amounted

to an agreement or assignment that the proceeds of the life insurance policy would inure for their benefit and protection as against his son, in compliance with section 8776 of the Code, 1935, which provides in part as follows:

"A policy of insurance on the life of an individual, in the absence of an agreement or assignment to the contrary, shall inure to the separate use of the husband or wife and children of said individual, independently of his creditors."

Both parties agree that the assignment, agreement, contract, or arrangement necessary to subject the proceeds of an insurance policy, otherwise exempt under section 8776, supra, to the payment of a debt, may be by parol, and that the agreement or assignment relied upon must be established by clear, satisfactory, and convincing proof. In re Estate of Hazeldine, 225 Iowa 369, 380, 280 N. W. 568, 570, and cases cited therein.

Both sides cite and appear to rely upon language contained in our opinion in the Hazeldine case. In that case the insurance policies were made payable to the estate. of the decedent, who left surviving as his sole heir an illegitimate child. The claimant contended that she had advanced money to the decedent and he promised her "that, if she would refrain from instituting any proceeding against him to enforce the payment of the money owed to her by him, he would arrange to make payment thereof and would make the life insurance policies carried by him and the proceeds thereof available to her as security for the repayment of the money owed to her, either by assignment of such policies or by designating her as beneficiary thereof." The claimant conceded that the insurance proceeds were not available to pay her claim unless she established an agreement or assignment sufficient to meet the requirements of section 8776. The defendants, on the other hand, conceded that "an oral contract of the insured, disposing of the proceeds of life insurance payable to the estate or to the administrator, and making such proceeds subject to a debt or debts of the insured, *if clearly established,* is sufficient to comply with the requirements of the statute." This court held (225 Iowa at page 382, 280 N. W. at page 575), as follows:

"It is our opinion that, considering all the evidence, its

meagerness in regard to essential matters and the inconsistencies revealed therein, it is insufficient to establish the oral contract upon which the appellant relies, in that clear, satisfactory and convincing manner that such contracts must be established when claimed to have been made with a person since deceased.'' (Citing cases.)

The situation herein appears to be directly analogous to that presented in the Hazeldine case. Practically the same concessions are made by counsel on both sides. The same question as to the sufficiency of the evidence is presented. The trial court herein reached the same conclusion which this court reached in the Hazeldine case. The decisive question is whether the court was right in holding that the alleged oral agreement or assignment was not established by clear, satisfactory, and convincing proof. We hold that the court erred in so holding.

The fact that claimants furnished board, room, and care for decedent, who was an invalid, during one year and ten months immediately preceding his death on July 24, 1938, and the amount due therefor, are propositions that have been adjudicated. The question is whether, about December 1937, an oral agreement or assignment was made by the decedent, which, in legal effect, renders the proceeds of his life insurance available to pay his debt to claimants.

Frank B. Steele, cashier of the Thurman State Savings Bank, testified to the following: In December 1937, he had a conversation with decedent about changing the beneficiary of said insurance policy; the beneficiary was then decedent's son; decedent wanted to borrow money on the policy; a loan was refused because decedent had borrowed the limit from the company; decedent asked how he would pay his debts; Steele suggested that he have it assigned to his estate, ''that might possibly be satisfactory to his creditors''; decedent said claimant (Port Stephenson) was ''riding'' him for money and he wanted to raise a couple hundred dollars; Steele sent in the policy and had the beneficiary changed to his estate; the policy came back, decedent brought it to the bank, handed it to Steele, told him he wanted Steele to keep it and after he was gone to see that the doctor, the undertaker, and Stephenson were paid;

decedent said, "I want you to handle this and see that the proceeds are collected and these bills paid"; Steele told decedent: "I would keep the policy and do whatever I could for him and take care of it so that it would not get lost. * * * I still thought it was to go for his creditors if made to his estate. * * * He said that way I could collect the proceeds and see that these bills were paid. * * * I didn't think that I was under any obligation until some creditors went ahead and wanted me to act as administrator. * * * If he came to me personally and asked for it [the policy], why I would give it back to him. I don't believe there is any reason why I should not, if he asked for it himself. * * * I don't think that leaving the policy with me would be any assignment to me for anything, because he didn't owe me anything."

After decedent's death, Steele, at the request of the undertaker, called the Omaha office of the company to see if the policy had value, and they said it had. He did not make any proof of loss. He told the company decedent had passed away. He did not expect to send the policy in unless he was appointed administrator. Mark M. Sheldon was appointed administrator, secured the policy from the bank and collected the proceeds. Steele was out of town when the policy was turned over to Sheldon. Steele considered that the transaction did not place any personal obligation on him.

Dr. Harold Cole, the physician that attended decedent, was a witness. He was decedent's second cousin, was claimant's son-in-law, and was president of the bank. He had a conversation with decedent in the fall of 1937. He testified:

"He said he would turn the policy over to Frank Steele, and that he would tell Frank to hold the policy, so that the undertaker and Port and I would be on the safe side. I conveyed this information to Port Stephenson. He said he would leave the policy with Frank for Port and the undertaker and me. Subsequent to that, Carl did leave the policy at the Thurman State Bank. He was supposed to take care of Carl, I was his only relative there. Port wanted me to move him away some place. * * * Carl Paul was present when I talked to Port Stephenson. It was up at the house. Carl and Port were both

there, and Carl heard the conversation. He heard both conversations that I had with Port. It was a general conversation and was in the house. Port wanted to get rid of Carl. I told Port that Carl had changed his insurance. I got them together on it."

Dr. Cole filed a claim against the estate. The claim was paid. He talked to Mark Sheldon about an administrator. Sheldon objected not so much to Steele as to decedent's plan for the attorney for the estate. Dr. Cole signed the application for Sheldon's appointment as administrator. He wanted an administrator "that would be congenial all of the way around." He assumed Sheldon would pay all of the bills.

Oral C. Johnson, a funeral director, testified. He had a conversation in 1937 with decedent about a casket, funeral, etc. Johnson asked about payment of his bill. Decedent said he had insurance, with his son as beneficiary. Johnson suggested that the son might not pay the bill, and told decedent, "Change the beneficiary to your estate and then your funeral expenses and your illness and doctor bills and all of that, what money you owed can be paid, if you owed anybody." Johnson had another conversation with decedent in January 1938. He testified:

"He told me he had changed the beneficiary on his New York Life Insurance policy to his estate, and that he had left the policy with Mr. Steele at the bank there. He said that after his death Mr. Steele would be administrator and that his bills would be paid, the funeral bills, the minister and the cemetery expenses and his sickness. He said they would be paid by Mr. Steele, he would be administrator over his policy. I went ahead and furnished the funeral as he selected it except the vault. * * * He simply told me that the policy was down at Steele's, and he made it payable to the estate. He said he made this to his estate, so his debts would be paid. That is why he did it. * * * I took charge of the funeral after his death. Before I put Mr. Paul in the casket, I consulted Frank Steele about the policy. I had him call the life insurance company on that date."

P. H. Stephenson, claimant herein, testified that he knew about the insurance policy being left with Frank Steele; kept decedent after that; he was still staying there at the time of his death; expected to be paid for keeping him, out of the insurance policy; the reason he kept him was because of the insurance policy which had been left with Frank Steele.

There was other testimony, of course. The foregoing gives the gist of what the evidence was. The four witnesses above referred to were the only witnesses. Such evidence as they gave stands undisputed. While appellees made a number of objections to portions of the testimony in the trial court, the objections are not asserted or relied upon in this court. Appellees do not challenge the competency of any evidence. What they challenge is the sufficiency of all the evidence to entitle claimants to relief. Counsel state: "Taking all of the acts and statements in the record most favorable to Appellants and omitting for the moment all inconsistencies, contradictions and contrary evidence, the aggregate would not remotely approach the requirements of any agreement sufficient to subject the proceeds of insurance herein involved." While the findings of the court are not as emphatic as this statement of counsel, they tend to sustain the contention.

The court's theory was that the arrangement was not, in legal effect, an assignment actually or equitably of the proceeds of the policy; it was made under mistaken belief that changing the beneficiary to his estate would make the policy security for his debts and available as security for additional loans at the bank; Steele did not expect to collect the policy unless he was named administrator, and merely retained it for safekeeping; Steele was not created a trustee nor was a trust created.

Appellees rely upon our decision in the case of In re Estate of Donaldson, 126 Iowa 174, 177, 101 N. W. 870, 871, as sustaining the theory of the court herein. We there state:

"The truth, as we apprehend it about this controversy, is this: Deceased, when he borrowed the money of his sister, was an unmarried man. It was supposed that, if he took out a life insurance policy payable to his estate, the avails thereof, in case of death, could be reached by his creditors; and he prom-

ised to take out a policy in the sum of $1,000, not as security for the loan, as plaintiff alleges, but to the end that, if anything happened before he had repaid the money, claimant would be sure of receiving it. No assignment was spoken of, no thought of a lien suggested; simply a promise to take out a policy of insurance in a certain amount, in the belief that, if he died before paying his sister, she might get her pay from the avails of his life insurance. This is something entirely different from a special contract or arrangement to pay the specific debt from the avails of a life insurance policy. At most, there was nothing but an equitable assignment of a part of the policy or the proceeds thereof, and in such cases there must in fact be an assignment, oral or written, of the fund, or some definite proportion thereof—such an agreement as that the assignor parts with all control thereover. Foss v. Cobler, 105 Iowa, 728; Fairbanks v. Welshans, 55 Neb. 574 (75 N. W. Rep. 865); Mally v. Mally, 121 Iowa, 237. There was no apportionment here of any part of the fund; and a mere agreement to pay out of a part of a particular fund is not sufficient, according to the weight of authority, to constitute an equitable assignment. Bank v. Sproat, 55 Minn. 14 (56 N. W. Rep. 254); Dirimple v. State Bank, 91 Wis. 601 (65 N. W. Rep. 501)."

Appellees rely upon the theory of the case asserted by appellants, counsel for appellants stating in their brief as follows: "In order for claimants to recover they must establish an arrangement with the insured which amounts to an assignment of the proceeds of his life insurance for their benefit." Pursuant to this assertion, appellees contend that the only question before us is the correctness of the court's holding that there was no assignment, legal or equitable, of the proceeds of the policy.

Appellees contend that the Donaldson case is controlling here. It was there held that an assignment is not effected if the assignor is free to revoke his assignment. Appellees contend that the decedent herein could have recovered the policy from Steele, could have changed the beneficiary, could have destroyed any interest of claimants in the policy; also, that the case narrows down to the proposition that all parties were

mistaken as to the law and incorrectly assumed that changing the policy so that it would be payable to the estate made it subject to debts; that, therefore, no assignment was intended or effected.

But, we think that there is more to the case. The evidence does show that all parties thought the policy was subject to debts. This was an erroneous view of the law unless there was also an agreement that the policy should inure to the benefit of creditors. As we interpret the evidence, however, decedent made an agreement that the policy should inure to his doctor, his funeral director, and his landlord, as well as his son. The doctor furnished medical services, relying upon the agreement; claimants herein furnished board, room, and care, in reliance upon it; the funeral director also relied upon it in providing his services. The agreement is supported by good consideration and is enforceable as against the son. Jacobson v. New York L. Ins. Co., 199 Iowa 770, 202 N. W. 578; Aetna L. Ins. Co. v. Morlan, 221 Iowa 110, 264 N. W. 58.

In the Jacobson case, supra, the insurance policy was delivered by the insured to his mother with the statement: "This is for your protection. You keep up the premiums on it, and I will never change it." The mother agreed to pay the premiums and did pay them. Later the insured married, secured the policy without the mother's knowledge, and changed the beneficiary to his wife. This court held that the mother was entitled to the proceeds, stating (199 Iowa, at page 772, 202 N. W., at page 579), as follows:

"It is apparent, from the evidence in this case, that the transaction between the mother and the son, at the time this policy was delivered to her, amounted to a contract: that is to say, the son, recognizing the right under the policy to change the beneficiary at any time he saw fit, contracted with the mother that, in consideration of her paying the premium on his policy, he would not exercise that right and change beneficiaries. The evidence shows that the mother paid all the premiums that were paid on this policy, in pursuance of this contract or understanding on her part. This was the moving consideration on her part to support the contract, and, in an

equity court at least, creates the right on her part which will be enforced as against all persons not having a superior equity.''

In the Morlan case, the facts are stated (221 Iowa, at page 117, 264 N. W., at page 61), as follows:

''It was undisputed that the agreement entered into at the time Mrs. Dutton was named as beneficiary provided that Mrs. Dutton was to continue to furnish support and care to the father and mother of herself and the insured during their lifetime, and also that the policy should stand as security not only for the $4,700 previously advanced by the parents to the insured, but also as to the advancement of $500 made at the time of the change of beneficiary, and also the $1,000 loaned to the insured at a subsequent date. In this situation, Mrs. Dutton stands in the position of a beneficiary with an equitable interest in her own right, and also as trustee for her father, A. D. Morlan, and such interest was created and existed prior to the time that the appellant claims to have acquired any interest in the policy.''

Later the insured changed the beneficiary in the policy. We held that the change was ineffective, stating (221 Iowa, at page 120, 264 N. W., at page 62), as follows:

''We are constrained to hold that the appellee, Letta M. Dutton, was named as beneficiary in the policy of insurance in controversy for a valuable consideration and before any possible rights, equities, or interests accrued in behalf of the appellant, Helen C. Morlan; and that such rights, coupled with an interest created existing and controlling equities in behalf of Letta M. Dutton; and that the assured thereafter was without power or right to assign the said policy or change the beneficiary therein. Such was the finding of the trial court, and such is the final conclusion of this court.''

By reason of the foregoing pronouncements, we are of the opinion and hold that the agreement of decedent that his insurance should inure to his doctor, landlord, and undertaker rendered section 8776 inoperative. Since all of said creditors rendered services for decedent in reliance upon said agreement,

decedent was without power to destroy the protection he had afforded them. Since he did not even attempt to do so, their rights were not affected.

The son has joined the administrator in applying the insurance proceeds toward payment of the claims of the doctor and funeral director. He permitted the agreement to be performed to that extent. He resists the performance of the agreement as to the claim for board, room, and care furnished decedent. A court of equity has been invoked to secure full performance of the agreement. Such relief should be granted. The court erred in refusing it.

Accordingly, the decree herein is reversed and the cause is remanded for the entry of a decree in harmony with this opinion. —Reversed and remanded.

All JUSTICES concur.