SOVEREIGN CAMP WOODMEN OF THE WORLD, Appellee, v. ELLA RUSSELL, Appellee; NICHOLAS F. RUSSELL, Appellant.

No. 41173.

MARCH 8, 1932.

E. L. Carroll and D. W. Harper, for appellant.

Johnston & Reynolds, for appellee Ella Russell.

Higbee & McEniry, for appellee Sovereign Camp of Wood-men of the World.

ALBERT, J.—The plaintiff is a corporation existing under the laws of the state of Nebraska, and is what is commonly designated as a "fraternal or mutual benefit society or association." On the 14th day of February, 1895, the association issued to John F. Russell a $3,000 policy payable to his wife, Clara Russell. Later Clara Russell and John F. Russell were divorced, and on March 6, 1905, the first-named policy was returned to the company and a new policy issued, made payable to the sons of John F. Russell, to wit, Nicholas F. and Joseph K. Russell. John F. Russell later married the last wife, Ella Russell, who is a party to this action. On April 24, 1912, the last-named policy was canceled and a new policy was issued, payable $1,000 to Ella, the wife, and $2,000 to Nicholas F. Russell. On May 24, 1929, the Company canceled the latter-named policy and issued a new policy for $3,000, naming Ella Russell as the sole beneficiary.

John F. Russell died June 29, 1930, whereupon this action was instituted to determine who was entitled to the proceeds of this policy. The association paid the amount due on the policy into the hands of the clerk of the court, and was released from further liability. Issue was then made, by proper pleadings, between Ella Russell and Nicholas F. Russell, to determine which of them was entitled to said proceeds. Nicholas F. Russell based his claim on the following facts, which are duly established: In 1912, when the question of changing the beneficiary in the policy was under consideration, Nicholas F. Russell and his father, John F. Russell, made an oral agreement that the policy was to be changed so that thereunder the wife, Ella, was to be a beneficiary to the extent of $1,000 and Nicholas was to be a beneficiary to the extent of $2,000, and it was agreed that thereafter Nicholas was to pay the assessments and dues on said policy, and John F. Russell would not change the beneficiaries therein

named. Thereupon, in the carrying out of this agreement, a new policy was issued by the company in 1912, in accordance with the terms of said agreement, naming Ella and Nicholas F. Russell as the beneficiaries in the amounts above specified. Nicholas proceeded to carry out the terms of said oral agreement, and paid the said association, by way of assessment and dues, the sum of $2,338.10. On May 24, 1929, John F. Russell, without the knowledge or consent of Nicholas, caused the 1912 policy to be cancelled and a new policy for the same amount to be issued, making his wife, Ella, the sole beneficiary thereunder, and on June 1, 1929, he notified Nicholas by letter that he need make no further payments under his aforesaid agreement, and that he (John F.) had changed the beneficiary in the policy to his wife, Ella.

Nicholas F. Russell having sustained his contention by the evidence in the record in the case, the question is whether or not this contention is available to defeat the rights of Ella Russell under the policy issued in 1929.

In some respects, the cases of Beed v. Beed, 207 Iowa 954, and Jacobson v. New York Life Insurance Co., 199 Iowa 770, are very similar to the instant case. In the Jacobson case there was a reserved right to change the beneficiary, which right existed in the case at bar. In that case we indorsed this rule:

" 'The rule in this State is that, while the assured may, in the absence of intervening equities, change at will the beneficiary named in his insurance policy, equitable rights may be acquired in a beneficiary certificate of insurance which a court of equity will recognize and enforce.' "

In that case the mother of the assured was the beneficiary in the first policy, under an agreement by which she was to pay the premiums thereon, and if she did so, the assured was not to change the beneficiary. The mother carried out her part of the contract, but later the assured changed the beneficiary, naming his wife as such. We there held that the rights of the mother were superior to the rights of the wife, and the mother was entitled to the proceeds of the policy, despite the fact that the wife was named as sole beneficiary in the last-named policy.

We followed this doctrine in the Beed case, supra, which seems to be quite the universal doctrine in this country. See

Locomotive Engineer's Mutual Life & Accident Insurance Assn. v. Waterhouse, 257 S. W. (Texas) 304; Columbian Circle v. Mudra, 132 N. E. (Ill.) 213; Gaston v. Clabaugh, 186 Pac. (Kans.) 1023; Supreme Council of Royal Arcanum v. Alexander, 97 Atl. (N. J.) 276; Supreme Council Catholic Benevolent Legion v. Murphy, 55 Atl. (N. J.) 497; McKeon v. Ehringer, 95 N. E. (Ind.) 604; Savage v. Modern Woodmen of America, 113 Pac. (Kans.) 802; Great Camp K. O. M. v. Savage, 98 N. W. (Mich.) 26; Pennsylvania R. Co. v. Wolfe, 52 Atl. (Pa.) 247; Smith v. National Benefit Society, 25 N. E. (N. Y.) 197; Stronge v. Supreme Lodge K. of P., 12 L. R. A. (N. S.) (N. Y.) 1206, followed by an exhaustive note on this subject; Savage v. Modern Woodmen of America, 33 L. R. A. (N. S.) (Kans.) 773, followed by a note on the same subject; Jory v. Supreme Council American Legion of Honor, 26 L. R. A. (Cal.) 733.

Each and all of the cases last cited, together with our own cases, hold to the general rule that where an agreement of this kind is made and carried out by a party other than the assured, such party acquires, in equity, a vested interest in the proceeds of the policy of which, in the absence of countervailing equities, he can not be deprived. What is here said is to meet the contention of the appellee that the Iowa cases cited were not mutual benefit society policies, and therefore the Iowa rule would not apply to the sort of policy we have in this case. All of the cases above cited are cases where the policy was issued by mutual benefit societies, and therefore no distinction can be made in this respect as to the kind of corporation which issued the policy. At this point, therefore, there would be no question that Nicholas F. Russell is entitled to $2,000 out of the proceeds of this policy.

But we are here met with certain statutes of the state of Iowa which were in existence at the time all of these policies were issued, which statutes are as follows:

"Section 8787. Within the above restrictions each member shall have the right to designate his beneficiary and from time to time have the same changed in accordance with the laws, rules, or regulations of the society.

"Section 8788. No beneficiary shall have or obtain any

vested interest in said benefit until the same has become due and payable upon the death of said member.

"Section 8792. No contract between a member and his beneficiary that the beneficiary or any person for him shall pay such member's assessments and dues, or either of them, shall deprive the member of the right to change the name of the beneficiary."

The above quoted sections appear but once in our code of insurance law, and that is in Chapter 402, which deals wholly with fraternal benefit societies, which are defined to be "a corporation, society, or voluntary association, formed or organized and carried on for the sole benefit of its members and their beneficiaries, and not for profit, and having a lodge system, with ritualistic form of work and representative form of government." Section 8777, Code, 1931.

The plaintiff association comes within this definition. While the Woodmen Association is a corporation under the laws of the state of Nebraska, in the absence of any other showing, the law of that state is presumed to be the same as the law of this state.

This statute is clear, concise, and wholly unambiguous. It specifically provides that a contract such as is relied upon in this case for the payment of the premiums or assessments for the insurance by a beneficiary or a third person for him should not prevent the insured from exercising his right to a change of beneficiary. It seems to be the well settled rule that such contract will be recognized in equity unless prohibited by statute or the rules of the society. 45 C. J. 199, and cases cited in Notes 30 and 31. This law was in existence at all times during the controversy herein, and Nicholas F. Russell is bound thereby. It is true that the equities herein are strong in his favor, but such equities are specifically overcome by the statutory provisions. It may be that he would have a cause of action against his father for a breach of contract, but that question is not now before us.—Affirmed.

WAGNER, C. J., and STEVENS, FAVILLE, KINDIG, and GRIMM, JJ., concur.

DE GRAFF, J., concurs specially.

EVANS, J., dissents.

DE GRAFF, J.—Concurring Specially. I concur in the affirmance of this cause which results in the beneficiary (appellee) Ella Russell's receiving the net proceeds of the last policy issued to John F. Russell by the Fraternal Society, Woodmen of the World. There is no legal reason to refer to any decision of this court or any other appellate court which involves an old-line legal reserve policy, and, therefore, the case of Jacobson v. New York Life Ins. Co., 199 Iowa 770, and Beed v. Beed, 207 Iowa 954, find no place in the analysis of the instant facts and the law bearing thereon. In the case at bar there is no occasion to refer to the equitable doctrine upon which the appellant Nicholas F. Russell bottoms his brief and argument. There is no equitable rule to be applied here, since we are dealing with statutes governing a Fraternal Beneficiary Society. Chapter 402, Code, 1927, is captioned "Fraternal Beneficiary Societies, Orders, or Associations," and Section 8791 of said Chapter provides that:

"Such associations shall be governed by this chapter, and shall be exempt from the provisions of the statutes of this state (Chapter 401) relating to life insurance companies, except as hereinafter provided."

It is a maxim of equity "that equity follows the law." The meaning of this maxim is that equity applies to equitable titles and interests those rules of law by which legal titles and interests are regulated, provided this can be done in a manner not inconsistent with the equitable titles and interests themselves. In the case of Magniac v. Thomson, 15 How. (U. S.) 281, 299, it is said:

"* * * wherever the rights or the situation of the parties are clearly defined and established by law, equity has no power to change or unsettle those rights or that situation * * *."

The statute law of this state (Section 8787) governing fraternal insurance provides that a member of said society shall have the right to designate his beneficiary and from time to time have the same changed in accordance with the laws, rules, or regulations of the society. The change of beneficiary in the instant case to Ella Russell was made by the insured John F. Russell in conformity to the laws and regulations of the Wood-

men of the World. At any rate the insurer never challenged same.

It is further provided that no beneficiary shall have or obtain any vested interest in said insurance until the same has become due and payable upon the death of said member. Section 8788, Code, 1927.

The insured John F. Russell died June 29, 1930, and at the time of his death Ella Russell, his then wife, was the designated beneficiary in the policy issued to him by the Woodmen of the World. The admitted net proceeds of this policy ($3000) was at that time $2,955.22. The insurer, Woodmen of the World, disclaimed any interest in said net proceeds and by bill of interpleader asked to have said proceeds paid into the hands of the Clerk of the District Court, which by order of the District Court was approved, and consequently the Woodmen of the World became a mere stakeholder. The legal question then presented itself, whether this sum was payable to the appellee Ella Russell, the beneficiary, or to Nicholas F. Russell, the appellant, who had paid assessments and dues on said policy amounting to $2,338.10, his proportionate share of the assessments and dues called for during a period of several years. As heretofore pointed out, the statutory law of Fraternal Societies governs this case, and no principle of equity jurisprudence is involved. The fact that the erstwhile beneficiary Nicholas F. Russell paid assessments and dues on said policy, as above stated, avails him nothing in this case, and this is by virtue of Chapter 402, Code, 1927, governing Fraternal Beneficiary Societies. It is therein provided that no contract between a member and his beneficiary wherein the beneficiary or any person for him shall pay such member's assessments and dues, or either of them, shall deprive the member of the right to change the name of his beneficiary. Section 8792. This legislative rule ends the contention and claim of the appellant Nicholas F. Russell. See Thomas v. Locomotive Eng. Mut. Life & Accident Ins. Assn., 191 Iowa 1152; Holden v. Modern Brotherhood of America, 151 Iowa 673, with cases cited.