IN RE ESTATE OF ARTHUR E. HAZELDINE.

JAMES S. COBURN, Assignee, Complainant, Appellant, v. H. R. LAFFERTY, Administrator, Appellee, DAVENPORT BANK & TRUST COMPANY, Guardian, Intervenor, Appellee, RED JACKET MANUFACTURING COMPANY, Intervenor, Appellee.

No. 44209

JUNE 21, 1938.

Havner, Flick & Powers and Welles, Kelsey & Cobourn, for claimant, appellant.

Cook & Balluff, for H. R. Lafferty, administrator, appellee.

Matthew Westrate, for Red Jacket Manufacturing Company, intervenor, appellee.

Lane & Waterman, for Davenport Bank & Trust Company, intervenor, appellee.

DONEGAN, J.—Arthur E. Hazeldine and Grace King were married in 1920 and in October 1930, their marriage was dissolved by a decree of divorce. Mary E. King is the mother of Grace King and of James Ernest King. After her divorce from Arthur E. Hazeldine, Grace King married a man named Hugh, and her name appears in the record as Grace King Hugh. Arthur E. Hazeldine remained single after the divorce and died on September 22, 1935, as the result of an automobile accident. After his death and before the institution of the action at bar, Dorothy Gwendolyn Hazeldine, then eight years of age, was found and adjudicated to be his illegitimate child and only heir at law. H. R. Lafferty was duly appointed and qualified as administrator of Hazeldine's estate and on March 14, 1936, the claim herein involved was filed against said estate. This claim is based upon moneys advanced to Hazeldine by Mary E. King, and was filed and is here prosecuted by James S. Coburn, assignee of Mary E. King. On August 4, 1936, the administrator filed a report of all claims filed against the estate. This report classified such claims, allowed some and disallowed others, and asked for an order approving the report and directing payment of certain claims allowed out of proceeds of life insurance in the hands of the administrator which, the report alleged, had been pledged to such payment. In this report the claim of Coburn, as assignee of Mary E. King, was allowed in full as a claim of the third class, without any preference to payment out of proceeds of life insurance. Upon the filing of the administrator's report the court fixed the time for hearing and directed that notice be given to all creditors.

At the time of his death and for some time prior thereto, Hazeldine carried five separate life insurance policies on his life, in the aggregate amount of approximately $72,000. The beneficiary named in each of said policies was either the estate of Hazeldine or the administrator thereof. Following the filing of the report of the administrator, and before hearing

thereon, the claimant filed an amendment to his claim and objections to the report. The amendment alleged in substance that, prior to his death, Hazeldine promised Mary E. King that, if she would refrain from instituting any proceeding against him to enforce the payment of the money owed to her by him, he would arrange to make payment thereof and would make the life insurance policies carried by him and the proceeds thereof available to her as security for the repayment of the money owed to her, either by assignment of such policies or by designating her as beneficiary thereof; that, in reliance upon said promise, Mary E. King refrained from instituting proceedings to enforce payment; and that, by reason of the said agreement, the proceeds of said life insurance policies inured to and are the property of claimant. In addition to the prayer of the original claim, the amendment prayed the court to order the defendant administrator to complete and specifically perform said agreement of Hazeldine and pay the proceeds of said life insurance policies, in the sum of $72,000, or so much thereof as shall come into the hands of the administrator, to claimant, as assignee of Mary E. King. The objections were to that portion of the report which failed to recognize and recommend the establishment of the claim as a preference claim entitled to payment out of the proceeds of life insurance policies. The objections also refer to litigation as to certain of said life insurance pending in the United States Circuit Court of Appeals for the Eighth Circuit, and in the district court of Hennepin County, Minnesota, and state that, until such litigation is finally determined, it cannot be determined whether it will be necessary for claimant to establish his right to the proceeds of the insurance thus involved.

The administrator, Lafferty, filed an answer and a cross-petition against claimant, as assignee of Mary E. King. The answer admitted the filing of the claim and the pending litigation, but denied all other allegations of the amendment to the claim and of the objections to the administrator's report. The cross-petition alleged that the administrator had collected and held proceeds of certain life insurance policies, subject only to the rights of two named claimants, other than Coburn, to a part of the proceeds of two of said policies under a written assignment and a written agreement of Hazeldine; that one Dorothy Gwendolyn Hazeldine, a minor, had been

adjudged and decreed to be the daughter of Hazeldine, deceased; that all of the proceeds of life insurance, except such part thereof as was pledged or assigned by Hazeldine in his lifetime, are exempt from the debts of Hazeldine, and are held by the administrator, in the nature of a trust fund for distribution to the heir or heirs. The prayer asked that the claim of Coburn for any lien upon or preference of claim upon the proceeds of life insurance be denied, and that such proceeds be declared exempt from debts of the decedent, and from claims against the estate. To this answer and cross-petition of the administrator the claimant, Coburn, filed a motion to strike, which, on hearing, was overruled.

The Davenport Bank & Trust Company, as guardian of Dorothy Gwendolyn Hazeldine, filed a petition of intervention, alleging that its said ward was the only heir of Hazeldine, and, as such, was entitled to the proceeds of all policies of life insurance not assigned by Hazeldine in writing, in his lifetime; denied the allegations contained in the amendment to claim; and asked that the administrator's report of disallowance and classification of claims be approved, that claimant be found to have no lien upon or preference of claim with respect to the proceeds of policies of life insurance, and that the right of the intervenor to all such proceeds be established as superior to any right of the claimant. The claimant filed an answer to the cross-petition and the petition of intervention of the bank, denying the jurisdiction of the court to adjudicate as to the insurance policies involved in other litigation.

Upon motion of the claimant the cause was transferred to equity and was tried as an equitable action. The trial court entered a decree finding that the claimant, Coburn, as the assignee of Mary E. King, had no lien upon or right in any of the policies of life insurance upon the life of Hazeldine, deceased, and that the proceeds of all said life insurance policies in the hands of the administrator were exempt from the debts of Hazeldine, deceased, and were held or to be received and held by the administrator for Dorothy Gwendolyn Hazeldine, the daughter and heir at law of Arthur E. Hazeldine, deceased. The decree also overruled the objections and exceptions of the claimant to the administrator's report. From this decree of the trial court the claimant has appealed.

I. No question is here involved as to the indebted-

ness owed by Hazeldine to Mary E. King, and the claim based upon such indebtedness was allowed by the administrator in the full amount of $75,879.57. The questions here involved go to the right of the claimant to subject the proceeds of insurance upon the life of Hazeldine to the payment of this claim. Of the five policies with which we are here concerned, by express provision thereof, one was payable to the estate and the remaining four were payable to the administrator. On the face of these policies, therefore, they were subject to the provisions of sections 8776 and 11919 of the Code of Iowa, 1935, as follows:

"8776. * * * A policy of insurance on the life of an individual, in the absence of an agreement or assignment to the contrary, shall inure to the separate use of the husband or wife and children of said individual, independently of his creditors. * * * "

"11919. * * * The avails of any life or accident insurance, or other sum of money made payable by any mutual aid or benevolent society upon the death or disability of a member thereof, are not subject to the debts of the deceased, except by special contract or arrangement, and shall be disposed of like other property left by the deceased."

It is conceded by the appellant that, unless there was "an agreement of assignment to the contrary," as provided in section 8776, or unless there was a "special contract or arrangement," as provided in section 11919, the proceeds of the five policies here involved would not be subject to the payment of Hazeldine's debts, but would inure to the benefit of his daughter and only heir, Dorothy Gwendolyn Hazeldine. It is conceded by the appellees that the proceeds of life insurance may be subjected to the debts of the insured by "an agreement or assignment," as provided in section 8776 or "by special contract or arrangement," as provided in section 11919; and that an oral contract of the insured, disposing of the proceeds of life insurance payable to the estate or to the administrator, and making such proceeds subject to a debt or debts of the insured, *if clearly established,* is sufficient to comply with the requirements of the statutes. The claimant-appellant in this case does not base his right to recover on a written contract, and the appellees deny the sufficiency of the evidence to estab-

ish the oral contract upon which the right to a recovery is founded. The first and most important question confronting us is, therefore, does the evidence establish an agreement between Hazeldine and appellant's assignor, Mary E. King, such as constitutes "an agreement or assignment" or a "special contract or arrangement," referred to in the sections above quoted? The answer to this question necessitates a consideration of the evidence.

II. The oral contract relied on is claimed to have been entered into at Toledo, Ohio, in a conversation that Hazeldine had there with Mary E. King and her daughter, Grace King Hugh. The evidence offered in support of this contract consisted of the testimony of Mary E. King, Grace King Hugh and James E. King. The record does not state the date of this conversation, but a letter written to Mary E. King by Hazeldine on February 19, 1935, states that he expected to be in Toledo on Wednesday of the following week, which would be February 27, 1935. James E. King was not present at this conversation and his evidence is confined to a conversation which he testifies he had with Hazeldine in Boston on either February 7 or 14, 1935. No claim is made, either in pleadings or in argument, that any contract was made in this conversation between James E. King and Hazeldine and, at most, King's testimony amounts to no more than evidence tending to show that Hazeldine was willing to secure his indebtedness to Mary E. King and Grace King Hugh by his life insurance, and that the meeting later held at Toledo, at which the alleged oral agreement was made, was the result of James E. King's talk with Hazeldine, and was arranged by Hazeldine for the purpose of carrying out promises made by him to James E. King. After his conversation with James E. King, Hazeldine did not go directly to Toledo, and did not return immediately to Davenport. In his letter of February 19, he speaks of having returned to Davenport the day before, and says that he did not stop at Toledo on his way back because he had to be in Cleveland the next week and would spend a day in Toledo at that time.

The only evidence in regard to the actual making and the terms of this alleged oral agreement is found in the testimony of Mary E. King and Grace King Hugh, and all of this evidence was received over proper objections that the witnesses were incompetent, under section 11257 of the Code of Iowa,

to testify to personal transactions or communications with Hazeldine, who was then deceased. Section 11257 is as follows:

"No party to any action or proceeding, nor any person interested in the event thereof, nor any person from, through, or under whom any such party or interested person derives any interest or title by assignment or otherwise, and no husband or wife of any said party or person, shall be examined as a witness in regard to any personal transaction or communication between such witness and a person at the commencement of such examination deceased, insane or lunatic, against the executor, administrator, heir at law, next of kin, assignee, legatee, devisee, or survivor of such deceased person, or the assignee or guardian of such insane person or lunatic."

As Coburn's interest in the claim here involved was derived by assignment from Mary E. King, and, as Mary E. King's alleged oral agreement was made with Hazeldine and would constitute a personal transaction or communication between her and Hazeldine, under the express terms of the statute, she was clearly incompetent to testify in regard to it.

The only evidence, therefore, by which the claimant can establish the alleged oral agreement and subject the proceeds of the insurance policies to the payment of his claim, is that of Grace King Hugh. The appellees contend that this evidence also cannot be considered, because Grace King Hugh was likewise incompetent to testify to such oral contract. This contention is based upon the interest which appellees claim Grace King Hugh had and still has in the event of this action. Appellees argue that, under the evidence of both Mary E. King and Grace King Hugh, it is clear that the alleged oral agreement, if any, made by Hazeldine in regard to his insurance, was not made with Mary E. King alone, but that it was made with both Mary E. King and Grace King Hugh; that, if such agreement was made, as testified to by both Mary E. King and Grace King Hugh, any right or interest in the proceeds of his life insurance, that Hazeldine agreed to give or gave as security for his indebtedness, was expressly agreed to be given or was given to both Mary E. King and Grace King Hugh; that the claim of Coburn, as assignee of Mary E. King, if established as a lien upon the proceeds of the insurance, will exhaust the proceeds of all of the insurance in the hands of or hereafter coming into

the hands of the administrator; and that, because of the interest of Grace King Hugh in all of the insurance policies or proceeds thereof, which Hazeldine subjected to the payment of his indebtedness to both Mary E. King and Grace King Hugh, the proceeds of said policies in the hands of said Mary E. King, or in the hands of her assignee, are held by said Mary E. King, or her assignee, for the benefit of Grace King Hugh to the extent, at least, of her proportionate interest therein.

We think it must be admitted that, as contended by appellees, if any agreement was made by Hazeldine in regard to the proceeds of the life insurance policies, it was made with both Mary E. King and her daughter, Grace King Hugh. Both Mary E. King and Grace King Hugh took part in the conversation with Hazeldine. The conversation was in regard to Hazeldine's indebtedness to both of them, and the oral agreement to which both testify was that both of them were or would be made beneficiaries in the policies, or that the policies and the proceeds thereof were or would be their security for the total indebtedness owed by Hazeldine to both of them. In addition to the claim here involved, Coburn filed a claim in the Hazeldine estate, as assignee of Grace K. Hugh, which was allowed by the administrator as a claim of the third class in the sum of $8,782.82. The record shows that, in the written assignment made to him by Grace K. Hugh, the provision in regard to the insurance policies and proceeds thereof covers all the policies and proceeds that are involved in this action, and in practically the identical language used in the assignment of Mary E. King. Neither of the claims against the estate was filed by Coburn in his own name alone as owner of the claim, but in both the title and in the body of both claims he is described as assignee, one of these claims being by James S. Coburn, assignee of Mary E. King, and the other by James S. Coburn, assignee of Grace K. Hugh. It is repeatedly asserted by appellees in argument and, so far as we have been able to find, nowhere denied, that Mary E. King and Grace K. Hugh, and not James S. Coburn, are the real beneficiaries of the claims filed by Coburn against the estate. If this be true, and if the appellant should prevail in this action, the entire proceeds of all the life insurance policies covered by the alleged oral agreement made by Hazeldine with Mary E. King

and Grace King Hugh will be paid to the appellant, as assignee, for the benefit of his assignor, Mary E. King.

True, no amendment was filed by Coburn to his claim as assignee of Grace K. Hugh, claiming any interest in or asking that the life insurance be subjected to the payment of that claim. In his reply argument appellant does not deny the appellee's statements that Mary E. King and Grace K. Hugh are beneficiaries respectively of the claims filed by him against the estate, under his assignments from them; but he contends that, because Grace K. Hugh or Coburn, as her assignee, did not file any amendment to the claim based on the assignment made by Grace K. Hugh to Coburn and did not claim any interest in the proceeds of the life insurance, in connection with that claim; because the time has now passed for amending such claim or asking any such interest in the proceeds of the life insurance; and because Grace K. Hugh has expressly disclaimed any interest in the event or outcome of this action, she cannot be held to be incompetent to testify to the oral agreement alleged to have been made by Hazeldine with her and her mother. We are unable to understand why the failure of Grace K. Hugh or her assignee, Coburn, to claim the right to participate in the insurance, as against the administrator and the intervenor, conclusively establishes her lack of interest in the event of this action. As a recovery by claimant in this action would give Mary E. King all the proceeds of all the insurance which, under the alleged oral contract, Hazeldine agreed should belong to both Mary E. King and Grace K. Hugh as beneficiaries or as security for his indebtedness to both of them, we see no reason why, as between themselves, Grace K. Hugh could not enforce the rights acquired by her to the proceeds of the insurance, under such contract, against the proceeds of the life insurance in the hands of Mary E. King. Nor are we convinced that the disclaimer of Grace K. Hugh establishes her lack of interest in the event of this action. The only evidence of such disclaimer referred to by appellant, and the only such evidence that we have been able to discover, consists of her answer to the question: "Mrs. Hugh, do you have any interest, either directly or indirectly, in the event or outcome of this suit?" to which she answered, "No." If, as we think the evidence indicates, under the assignments to Coburn, Mary E. King and Grace K. Hugh are the real beneficiaries of the claims

filed by him against the Hazeldine estate, Grace K. Hugh, as well as Mary E. King, would have had a right to subject the proceeds of the life insurance to the payment of her claim when it was allowed. If she had such right when her claim was allowed, how and when did she cease to have it? Assuming that, as against the administrator and the intervening guardian of the minor child and heir, she cannot now enforce that right, because the time has passed when she could amend her claim, as Mary E. King did, and ask that her interest be established against the proceeds of the life insurance, how can this affect her right to such proceeds if the contract with Hazeldine is established and all of such proceeds are in the hands of Mary E. King by virtue of the very contract under which Grace K. Hugh acquired her right to share in such proceeds? No suggestion is made that Grace K. Hugh ever made any disposition of her right to participate in the proceeds of the insurance other than that contained in her assignment to Coburn, and if that assignment, as we think the evidence indicates, did not dispose of her beneficial interest in the indebtedness owed to her by Hazeldine and of her right to have the proceeds of the life insurance applied in payment of such indebtedness, then that right must still exist in her. In such a fact situation, Grace K. Hugh's disclaimer of any interest in the outcome of this action, conceding it to have been honestly made and to be true (so far as the enforcement of any right or interest in the proceeds of the insurance against the administrator or intervenor is concerned), cannot change the fact that, if the alleged oral contract was in fact made, Grace K. Hugh did have and still has a right to at least a part of the proceeds of Hazeldine's life insurance under that contract, and is incompetent to testify in regard to the transaction with Hazeldine out of which the contract arose. That neither a failure to prosecute nor a disclaimer of an interest will remove the incompetency of a witness, under the statute under consideration, is shown in the following cases: James v. Fairall, 168 Iowa 427, 148 N. W. 1029; Linnemann v. Kirchner, 189 Iowa 336, 178 N. W. 899; Frye v. Gullion, 143 Iowa 719, 121 N. W. 563; Ivers v. Ivers, 61 Iowa 721, 17 N. W. 149; Rawleigh Co. v. Moel, 215 Iowa 843, 246 N. W. 782; McClanahan v. McClanahan, 129 Iowa 411; 105 N. W. 833. In McCalanahan v. McClanahan, 129 Iowa 411, at page 413, 105 N. W., at page 834, it is said:

"It is not necessary that the interest should be derived by transfer or assignment. It may be 'otherwise,' and, as used, that word is one of broad significance. It means that, if the right asserted by a claimant depends for its existence and validity upon a transaction between the deceased and a third person, the evidence of such third person shall not be allowed to prove the transaction."

In this case, as in the McClanahan case, "the right asserted by claimant depends for its existence and validity upon a transaction between the deceased and a third person;" that third person was Grace K. Hugh, who took part in the very transaction upon which the claim of Mary E. King, claimant's assignor, is based; and we think it necessarily follows that "the evidence of such third person (Grace K. Hugh) shall not be allowed to prove the transaction."

III. But, even if Grace King Hugh were not incompetent to testify to Hazeldine's conversation with her and Mrs. King, we think the evidence is still insufficient to establish the alleged oral agreement. The provisions of our statutes exempting the proceeds of life insurance from the debts of the insured are a part of the public policy of the state. Such provisions must be liberally construed in protecting the interests of those for whose benefit they were enacted, and, under the holdings of our cases, the "agreement or assignment" or "special contract or arrangement" making such proceeds subject to the claims of creditors must be shown by clear and satisfactory evidence. Larrabee v. Palmer, 101 Iowa 132, 70 N. W. 100; In re Estate of Donaldson, 126 Iowa 174, 101 N. W. 870; In re Will of Grilk, 210 Iowa 587, 231 N. W. 327.

As already stated, the evidence of James E. King is confined to a conversation between him and Hazeldine in Boston on either February 7 or 14, 1935. Moreover, his evidence clearly shows that Hazeldine told him that Mrs. King and Mrs. Hugh were not named as beneficiaries in the policies; that he understood that, in order to make the proceeds of the policies available to them, they should be named as beneficiaries in the policies and the policies delivered to them; and that he insisted that this should be done by Hazeldine without delay. Notwithstanding the importance attached by him to changing the policies and placing them in the possession of Mrs. King and

Mrs. Hugh, and although it is claimed by the appellant that the oral contract alleged to have been made at Toledo was pursuant to the promises made by Hazeldine in this conversation, with James E. King, there is nothing in this evidence to show that James E. King ever informed Mrs. King or Mrs. Hugh of the alleged promises.

This conversation with James E. King was approximately two or perhaps three weeks prior to the conversation at Toledo, in which it is claimed the oral contract here relied upon was made, and Hazeldine's death did not occur until almost seven months after the date of the Toledo conversation. The record shows many letters and telegrams and telephone conversations between Hazeldine and Mrs. King and Mrs. Hugh prior to the date of the alleged oral contract, but no communication of any kind thereafter. These letters and telegrams and telephone conversations contain abundant evidence as to Hazeldine's indebtedness to Mrs. King and Mrs. Hugh, his failure to make payments according to promises made by him to them, and the persistence of their demands, but there is not a single word in any of them in regard to life insurance. The only place in which there is any evidence whatever in regard to life insurance is found in the testimony of James E. King as to his conversation with Hazeldine in Boston, and in the testimony of Mrs. King and Mrs. Hugh as to their conversation with him in Toledo.

Moreover, the testimony as to the conversation at Toledo contains no reference whatever to the conversation had between James E. King and Hazeldine. The testimony of Mrs. Hugh shows that, in the beginning of this conversation, her attitude was one of complete lack of faith in Hazeldine; that she berated him for his failure to keep his promises in the past and demanded something definite in regard to the future; that, when the subject of life insurance was mentioned, no reference whatever was made to naming her and her mother as the beneficiaries and delivering the policies to them; but that, notwithstanding her complete lack of faith in Hazeldine in the beginning of the conversation, when the subject of life insurance was discussed, she was content to accept his mere statement that she and her mother were beneficiaries in the policies, without further information or proof of any kind whatever. Her testimony further shows that the only statements made by

382

Hazeldine in regard to the insurance were not, that he would make her and her mother the beneficiaries of the insurance in consideration of their refraining from taking measures to enforce payment, but, that he carried insurance policies and that they were the beneficiaries. In other words, no promise was made by Hazeldine as to something he would do in the future, but the statement made was as to a present fact or condition. No demand was made for the production of the policies, no further proof was offered by Hazeldine as to the truth of his statements, and none was requested by Mrs. Hugh; but, according to Mrs. Hugh's own testimony, she said: "Well, you haven't lived up to your agreements that you made with me through the years but since I feel I can definitely depend on your word, I will not push you to collect any large amounts but I will keep my attorney that I have engaged in Davenport to collect what alimony I can collect from you."

The evidence, moreover, leaves grave doubt as to the sufficiency of the consideration for Hazeldine's alleged promise. The consideration claimed is, that Mrs. King refrained from instituting any proceedings to enforce payment of the sums due her from Hazeldine. In view of her past experience with him, it seems incredible that Mrs. King was not aware of Hazeldine's precarious financial condition, or that she had decided on any specific action or proceeding to enforce payment by him of the money due her. The evidence of Mrs. Hugh as to this phase of the case is that, after Hazeldine had made the statements attributed to him in regard to the insurance, Mrs. King said: "Well, then, Arthur, we will again go along with you and I am sure that Grace will not push you and I won't push you either and we will just feel that you are keeping up these life insurance policies and we will take your word of honor to that effect." Further than this we find nothing in the way of any promise on the part of Mrs. King, and we think this insufficient to show that she actually had any definite intention of taking, or that she refrained from taking, any specific action.

It is our opinion that, considering all the evidence, its meagerness in regard to essential matters and the inconsistencies revealed therein, it is insufficient to establish the oral contract upon which the appellant relies, in that clear, satisfactory and convincing manner that such contracts must be established when claimed to have been made with a person since deceased. In re

Estate of Donaldson, 126 Iowa 174, 101 N. W. 870; Herriman v. McKee, 49 Iowa 185; Groh v. Miller, 196 Iowa 1367, 195 N. W. 259; Helmers v. Brand, 203 Iowa 587, 213 N. W. 384; Houlette v. Johnson, 205 Iowa 687, 216 N. W. 679; Glissman v. McDonald, 128 Neb. 693, 260 N. W. 182.

IV. One of the policies of insurance involved in this action, Aetna No. N997927, was for $10,000 and the designated beneficiary was the estate of Hazeldine. Prior to his death, Hazeldine, representing Red Jacket Manufacturing Company, had sold George A. Clark & Son of Minneapolis, Minn., certain goods and merchandise, to be delivered in the future, under contracts which provided that part payment could be made by Clark & Son in bonds of Red Jacket Manufacturing Company. As security for the performance of such contracts by the Red Jacket Company, Hazeldine had assigned and delivered this policy to Clark & Son, and, at the time of his death, the contracts had not been fully performed and the policy was still in the hands of Clark & Son. Within a month of his appointment the administrator of Hazeldine's estate obtained permission from the district court of Scott county, Iowa, the court having original and general jurisdiction of Hazeldine's estate, to enter into an agreement with Clark & Son under which the proceeds of this policy would be collected by Clark & Son, the administrator joining in a release to the insurance company, and deposited in a special account in a bank in Minneapolis as collateral security to the said contracts, in substitution for said policy. This arrangement was made by the administrator with Clark & Son, the proceeds of the policy were collected and deposited in a special account in the bank in Minneapolis, and, prior to the trial of this action, the contracts between Red Jacket Manufacturing Company and Clark & Son had been fully completed and Clark & Son had released all claims to such proceeds.

In the meantime, James S. Coburn had applied to the probate court of Hennepin county, Minn., and obtained the appointment of a special administrator of Hazeldine's estate. He also asked that court to appoint a general administrator of Hazeldine's estate, alleging that he had a claim against the proceeds of said insurance policy on deposit in the bank in Minneapolis. The administrator, Lafferty, filed objection to the appointment of such general administrator. On hearing the probate court of Hennepin county, Minn., held that Coburn had

already submitted himself to the jurisdiction of the Iowa court by filing his claim there, and refused to appoint a general administrator. From this decision Coburn appealed to the district court in and for Hennepin county, Minn., and that appeal was still pending at the time of the submission of the appeal in this case.

In his amendment to the claim filed in this action, the claimant sought to establish the oral contract alleged to have been made by Hazeldine with Mrs. King and Mrs. Hugh, and to have the proceeds of the insurance policies applied in payment of his claim, as assignee of Mary E. King. The administrator filed an answer and cross-petition to this amendment to the claim. The cross-petition alleged rights of the administrator to the proceeds of the said Aetna policy, subject only to the rights of Clark & Son therein; that such proceeds are held by him, in trust, for Dorothy Gwendolyn Hazeldine, as the only child and heir of Hazeldine, free from all debts of the deceased; and asked that his rights therein be established by the court against any claims or rights of the claimant. Davenport Bank & Trust Company, as guardian of Dorothy Gwendolyn Hazeldine, filed a petition of intervention, alleging the rights of its said ward to the proceeds of all the insurance policies, and asked that her rights therein be established as against all claims and rights of the claimant. In answer to this cross-petition and petition of intervention claimant alleged the payment of the proceeds of the policy to Clark & Son, the deposit of same in the bank in Minneapolis, the action pending in the district court of Hennepin county, Minn., in which claimant is asking that the rights of the parties to such proceeds on deposit in said bank be determined in said Minnesota court, and asked that the part of the cross-petition and petition of intervention relating to said policy be dismissed for want of jurisdiction, and that the hearing in this action be confined to the rights of the claimant as to the proceeds of other policies. Upon the trial of this action, and before any evidence was introduced, claimant, in open court, asked to withdraw his amendment to claim, in so far as it concerned the said Aetna policy and the proceeds thereof. This was objected to by both the administrator and the intervenor, and no ruling was made by the trial court until final decree, in which the court held that it had jurisdiction as to said policy and the proceeds thereof.

■ Appellant contends that, as to the proceeds of this Aetna policy, the district court of Scott county, Iowa, had no jurisdiction, because claimant had withdrawn and dismissed that part of his claim with reference to said policy, and because the proceeds of said policy were never in the hands of the administrator and subject to the control of the probate court of Scott county, Iowa. In support of the first part of this contention appellant relies upon sections 11562 and 11564, Code of 1935, and on our holding in Davis v. Preston, 129 Iowa 670, 106 N. W. 151. Section 11562 provides that:

"An action may be dismissed, and such dismissal shall be without prejudice to a future action;

"1. By the plaintiff, before the final submission of the case to the jury, or to the court when the trial is by the court. * * *"

Section 11564 provides that:

"In any case when a counterclaim has been filed, the defendant shall have the right of proceeding to trial thereon, although the plaintiff may have dismissed his action or failed to appear."

Davis v. Preston, 129 Iowa 670, 106 N. W. 151, held that, in an action to set aside the probate of a will, when the answer of the defendants not only denied the allegations of the petition but alleged affirmative matters and asked judgment establishing the will as against the plaintiffs, upon a dismissal of their cause of action by plaintiffs before submission, the trial court had no further jurisdiction and could not enter a judgment establishing the will as against the plaintiffs. The decision, however, was based upon the statutory provisions under which an order probating a will can be set aside by a separate action, and held that there is no provision of statute authorizing those who claim under a will to have the order of probate established and confirmed by a proceeding in which those who may possibly be entitled to bring an action to set it aside are made parties defendant. We find nothing in that decision that would be decisive of the question now under consideration.

The claimant's amendment to his claim alleged an oral agreement made by Hazeldine with Mrs. King and Mrs. Hugh in regard to all the policies and proceeds thereof, asked that

such alleged oral agreement be established, and that his rights thereunder be adjudicated as against the estate and the administrator. Only one contract was involved. This contract covered all the insurance on Hazeldine's life. If established, claimant's right to the proceeds of the insurance, as against the estate and the administrator, would necessarily follow. A single cause of action based upon said alleged oral agreement was involved, and, under appellant's amendment to his claim, the jurisdiction of the trial court was invoked in its determination. The cross-petition and the petition of intervention not only denied the alleged oral contract, without which claimant would have no right to the proceeds of the insurance, but affirmatively alleged facts which, if established, would entitle the administrator to the proceeds of the policy of insurance involved, subject only to the rights of Clark & Son and of the intervenor, as guardian of Dorothy Gwendolyn Hazeldine, and asked that these rights of the administrator and of the intervenor be established as against any claims or rights of the claimant. Under this state of the pleadings, if the claimant were allowed to dismiss as to a part of his claim and submit that part to the jurisdiction of another court in another action, this would amount to a splitting of a single cause of action. And, if there had been 48 separate policies of insurance and each of these policies had been pledged as collateral to a contract in each of the 48 different states, the claimant would have 48 separate actions and decisions in reference to this single contract. By stating the facts constituting their rights to the proceeds of the insurance and asking that these rights be established as against the rights claimed by the claimant, we think the administrator and the intervening guardian stated a cause of action which, if proved, entitled them to affirmative relief. That claimant's dismissal as to a part of his amendment to his claim did not deprive the court of its jurisdiction to adjudicate the rights claimed by the cross-petitioner and intervenor is, we think, sustained by our decisions in Worrell v. Wade's Heirs, 17 Iowa 96; King v. Thorp, 21 Iowa 67; Sigler v. Hidy, 56 Iowa 504, 9 N. W. 374; Foster & Co v. Ellsworth, 71 Iowa 262, 32 N. W. 314; Hoyt v. McLagan, 87 Iowa 746, 55 N. W. 18; Lex v. Selway Steel Corp., 203 Iowa 792, 206 N. W. 586.

Nor can we agree with appellant's contention that, because the proceeds of this policy were never in the hands

of the administrator in Scott county, Iowa, the district court of Scott county had no jurisdiction with reference to such proceeds. Appellant's contention is based upon the assumption that the proceeds of this particular policy, being on deposit in the bank in Minneapolis, were beyond the jurisdiction of the Iowa court. In other words, that an action to determine rights as to such proceeds is an action *in rem*, and could only be prosecuted in a Minnesota court having jurisdiction of such proceeds. In this case, however, the right to such proceeds as between the claimant, on the one hand, and the administrator and intervenor, on the other hand, does not depend upon the location of the proceeds. Such rights depend upon the contract contained in the insurance policy and upon the alleged oral contract under which appellant claims an interest therein. The contract contained in the policy of insurance, by its express terms, made the proceeds payable to Hazeldine's estate. Conceding that, if the oral agreement upon which appellant relies were established, appellant, and not the estate of Hazeldine, would be entitled to such proceeds, this would be because Mary E. King, instead of the estate, would be the beneficiary in the policy. The policy became payable upon the death of Hazeldine, and the right to the proceeds, as between Mary E. King and the estate, became fixed at that time. If Hazeldine did not make the alleged oral agreement with Mary E. King, the proceeds of the policy were payable to the administrator. If Hazeldine did make the alleged agreement, the proceeds were payable to Mary E. King. Upon the death of Hazeldine, a relation of debtor and creditor came into existence, the insurance company being the debtor and either the estate of Hazeldine or Mary E. King being the creditor. The fact that the policy had been pledged as security to Clark & Son, for the performance of the contracts with the Red Jacket Company, did not change the right to the proceeds as between the claimant and the administrator. Clark & Son's rights were not absolute as to all the proceeds. The policy and, after substitution, the proceeds were security for the fulfillment of the Red Jacket Company's contracts, and, when these contracts were fully performed, Clark & Son would have no further right or interest in such proceeds. In any event, any portion of the proceeds not required to compensate Clark & Son for a failure of the Red Jacket Company to perform its

contracts with them would still belong to the administrator or to the claimant.

This action is in equity, brought by the claimant in the district court of Scott county, Iowa, to determine and establish rights as between him and the administrator to proceeds of life insurance carried by Hazeldine upon his life. The administrator, by his cross-petition, and the guardian, by its petition of intervention, asked that their rights be determined and established as against the claimant. The rights asserted by the claimant to the proceeds of such policy were founded upon the oral contract alleged to have been made by Hazeldine with Mary E. King. Only one oral contract was alleged, and under this contract, if established, the claimant would be entitled to all the proceeds of insurance as against the administrator and intervenor, except such portion, if any, as had been pledged or assigned by Hazeldine prior to the making of such alleged oral agreement. As between the claimant and the administrator, therefore, the determination of the question as to whether such alleged oral contract actually had been made, determined the rights of the parties to this action as to the proceeds of all the policies.

The fact that the decree rendered by the trial court in this action, in determining the rights of the parties to the proceeds of the policy on deposit in the bank in Minneapolis, indirectly affects the status of such proceeds does not make such decree one *in rem* instead of *in personam*. Primarily and fundamentally, courts of equity act only *in personam*, and it is only by statute that they acquired jurisdiction to act directly *in rem*. 21 C. J., 194, 195; 1 Pomeroy's Equity Jurisprudence, 2d Ed., sec. 135. That the *locus* of a policy of insurance or of the proceeds thereof does not restrict the jurisdiction of a court of equity in determining the rights of the parties to such policy or proceeds is, we think, definitely held in Cross v. Armstrong, 44 Ohio State 613, 10 N. E. 160. See, also, Ward v. Bankers Life Co., 99 Neb. 812, 157 N. W. 1017; Leigh v. Green, 193 U. S. 79, 24 S. Ct. 390, 48 L. Ed. 623; Densby v. Acacia Mutual Life Association, 64 App. D. C. 319, 78 F. 2d 203, 101 A. L. R. 863; Winnett Times Publishing Co. v. Berg, 82 Mont. 141, 265 P. 710; Austin v. Royal League, 316 Ill. 188, 147 N. E. 106.

It is our conclusion that the district court of Scott county, Iowa, had jurisdiction to determine the rights of the claimant

and of the administrator and the intervenor, as to all of the insurance carried by Hazeldine upon his life, under the five policies involved in this action; that the determination of such rights included the determination of the rights of the parties to the proceeds of the Aetna policy in the special deposit in Minneapolis, as well as the proceeds of the other policies; and that the decree entered by the trial court establishing the rights of the administrator and the intervenor, as to the proceeds of that policy, was not beyond its jurisdiction.

We find no reason for disturbing the decree of the trial court in this case, and it is, accordingly, affirmed.—Affirmed.

STIGER, C. J., and all Justices concur.