MINNIE M. SHEPHERD, Appellee, v. PACIFIC MUTUAL LIFE INSURANCE COMPANY, Appellee; VIOLA MAE SHEPHERD, Guardian, Cross-Petitioner, Appellant.

No. 45724.

NOVEMBER 12, 1941.

Walter J. Barngrover, for appellant.

Chester W. Whitmore, for appellee.

MILLER, C. J.—This action was commenced at law by the mother of the insured as named beneficiary for the proceeds of a policy of life insurance issued by the defendant insurance company. Viola Mae Shepherd, divorced wife of the insured and legal guardian of Judith Anne Shepherd, minor daughter of the insured, filed an answer and cross-petition. The answer was in the nature of a general denial. The cross-petition asserted an oral contract with the insured whereby his daughter, Judith Anne Shepherd, was named an irrevocable beneficiary under the policy. The answer to the cross-petition was in the nature of a general denial and also asserted certain matters by way of estoppel. The reply to such answer likewise contained a general denial of the affirmative defenses in the answer and asserted matters by way of waiver and estoppel. The cross-petitioner then filed a motion to transfer the issues presented by Count I of the cross-petition to the equity side of the docket. This motion was sustained and trial was had upon such issues in equity. Pursuant to stipulation of the parties, the defendant

insurance company paid the proceeds of the policy, $5,231.67, to the clerk of court to be disbursed pursuant to the orders of the court. At the conclusion of the trial, the court found against the cross-petitioner on the equitable issues and dismissed Count I of the cross-petition. From such decree the cross-petitioner appeals.

At the outset, we will consider certain essential facts which are not disputed. The policy of insurance was issued on June 29, 1932, with Arthur W. Shepherd the insured and in the sum of $5,000. The proceeds of the policy in the event of death were payable to his father, James W. Shepherd, or, in the event of his prior death, to his mother, Minnie M. Shepherd, plaintiff herein. At the time that the policy was issued, Arthur was 31 years of age and unmarried. The policy contained the provision that "the Insured may from time to time, while this Policy is in force, designate a new Beneficiary by filing a written notice thereof at the Home Office of the Company, accompanied by this Policy for endorsement. Such change shall take effect on the endorsement of the same on this Policy by the Company and not before."

Three years later, on June 10, 1935, Arthur and Viola were married. The following month, as of July 3, 1935, the beneficiary in this policy was changed to "Viola Mae Shepherd, Wife of the Insured, should she survive said Insured, otherwise to the Executors, Administrators or Assigns of the Insured." The right to change the beneficiary at any time thereafter was reserved by the insured. On July 22, 1936, James W. Shepherd, father of Arthur, died. As of October 23, 1936, the beneficiary in this policy was changed to "Viola Mae Shepherd, Wife of the Insured, or in the event that she shall die before the Insured, to the children born of the marriage of the Insured and the said Viola Mae Shepherd, equally or to the survivors or survivor." The right to change the beneficiary at any time thereafter was reserved by the insured. As of December 29, 1936, the beneficiary in this policy was changed to "Viola Mae Shepherd, Wife of the Insured, or in the event that she shall die before, at the same time as, or within ten days thereafter, the Insured, to the children born of the marriage of the Insured and the said

Viola Mae Shepherd, equally or to the survivors or survivor, or should none be surviving ten days after the Insured, to William S. Shepherd, Brother of the Insured, or in the event that he shall die before, at the same time as, or within ten days after, the Insured, to the Executors, Administrators or Assigns of the Insured.'' The right to change the beneficiary at any time thereafter was reserved by the insured.

On February 17, 1937, Judith Anne, daughter of Arthur and Viola was born. On August 9, 1939, Arthur and Viola were divorced.

As of August 29, 1939, there was endorsed upon the policy the following:

''A written request therefor having been made by the Insured, the beneficiary under this Policy is hereby changed to Judith Ann Shepherd, Daughter of the Insured, or in the event that she shall die before the Insured, to William S. Shepherd, Brother of the Insured. * * * It is understood and agreed that the right to change the beneficiary at any time hereafter, in the manner and form provided in the Policy, is reserved to the Insured.''

As of August 30, 1939, there was endorsed upon the policy the following:

''A written request therefor having been made by the Insured, it is hereby understood and agreed that the payment of the death benefit under this Policy shall be made in monthly installments of $50.00 each, said installment payments to be made in the manner and subject to the conditions of the Settlement Options of the Policy and of Option 3 thereunder.''

As of March 4, 1940, there was endorsed upon the policy the following:

''A written request therefor having been made by the Insured, the Beneficiary under this Policy is hereby changed to Minnie M. Shepherd, Mother of the Insured, or in the event that she shall die before the Insured, to Earl R. Shepherd, Brother of the Insured, or in the event that he shall die before the Insured, to William S. Shepherd, Brother of the Insured. The

interest of any beneficiary who shall die before the Insured shall pass to the Insured, unless otherwise provided. It is understood and agreed that the right to change the beneficiary at any time hereafter, in the manner and form provided in the Policy, is reserved to the Insured.''

As of March 18, 1940, there was endorsed upon the policy the following:

''A written request therefor having been made by the Insured, it is hereby understood and agreed that the endorsement placed on this Policy under date of August 30, 1939, and setting out the manner of payment of the death benefit under this Policy, is hereby made void and of no effect.''

On June 14, 1940, Arthur died. On June 17, 1940, Viola was appointed guardian for Judith Anne. On July 31, 1940, this action was commenced. On December 6, 1940, Viola's cross-petition on behalf of Judith Anne was filed.

Plaintiff's petition, of course, is based upon the endorsements of March 4, 1940, and March 18, 1940, whereby she was made the beneficiary under the policy. The cross-petition asserts that the endorsements of August 29, 1939, and August 30, 1939, were made pursuant to an oral contract between Viola and Arthur for the benefit of Judith Anne to provide $50 per month for her care, maintenance and education until she should become 18 years of age, that such designation was agreed to be irrevocable, Judith Anne acquired a vested interest, both legal and equitable, which could not be divested and the purported change in favor of plaintiff is void. The answer to the cross-petition pleads the divorce decree as an adjudication against the claim of the cross-petition, asserts consideration for the designation of plaintiff as beneficiary, and pleads matters of waiver and estoppel. The reply to this answer also pleads the issues of waiver and estoppel against plaintiff. These issues are now before us for determination. Since they were transferred to the equity side of the docket below, the trial is de novo here.

Before undertaking to review the evidence, it is necessary to first determine the competency of Viola to testify concerning the alleged oral contract between her and Arthur. The

1310

court permitted her testimony to be received subject to a standing objection that she was incompetent as a witness under section 11257 of the Code, 1939 (the dead man statute). There is no merit in this objection to her testimony. The bar of the foregoing statute applies where a party to the action, or a person interested in the event thereof, is examined as a witness against the executor, administrator, etc., of the deceased person. The plaintiff, as beneficiary under a life insurance policy, does not come within any of the designated classifications. Beed v. Beed, 207 Iowa 954, 958, 222 N. W. 442; Crowell v. Northwestern Nat. L. Ins. Co., 140 Iowa 258, 262, 118 N. W. 412; Shuman v. Supreme Lodge, 110 Iowa 480, 482, 81 N. W. 717. Plaintiff relies upon In re Estate of Hazeldine, 225 Iowa 369, 280 N. W. 568. The case is not in point. There the policy was payable to the estate and the proceedings were against the administrator. The statute was clearly applicable. Not so here.

Viola's testimony was also received subject to a standing objection that the communications were privileged under section 11262 of the Code, 1939, relating to communication between husband and wife. The testimony regarding the purported oral contract between Arthur and his wife referred to two transactions. One transaction occurred during negotiations between Arthur, Viola and Viola's father while the arrangements for divorce and property settlement were being determined. The other transaction occurred after the divorce had been granted.

Obviously, the statute relied upon does not apply to a transaction between a man and his divorced wife after the divorce has been granted. As to the transaction that occurred before the divorce was granted, it is insisted that the communication was not a marital communication and, therefore, not within the contemplation of the statute. Such is our holding in Sexton v. Sexton, 129 Iowa 487, 491, 105 N. W. 314, 316, 2 L. R. A., N. S., 708, wherein we state:

"It is the marital communication, then, that is sought to be protected, and this is so because there can be no purpose of public policy to interfere, except to guard and foster the marital

relation. Any other construction would be intolerable, and would lead to most absurd results. Thus it cannot be that words spoken by husband to wife, or vice versa, in the presence and hearing of one or more third persons, and hence in the very nature of things not to be construed as in any marital sense private or confidential, must be held within the protection of the privilege, although clearly within the letter of the statute.''

The foregoing pronouncement appears to have been adhered to by this court in the case of Stutzman v. People's Trust & Savings Bk., 205 Iowa 379, 381, 218 N. W. 39. Accordingly, we are disposed to the view that this objection to Viola's testimony was also without merit.

Turning now to the testimony regarding the purported oral contract between Arthur and Viola, by virtue of which it is contended that the designation of Judith Anne as the beneficiary in the policy made under date of August 29, 1939, was agreed to be an irrevocable designation, we are confronted with the rule as to the quantum of proof necessary to establish such a contract. In speaking of the evidence offered to sustain a similar contract, we state in In re Hazeldine, 225 Iowa 369, 382, 383, 280 N. W. 568, 575, as follows:

''It is our opinion that, considering all the evidence, its meagerness in regard to essential matters and the inconsistencies revealed therein, it is insufficient to establish the oral contract upon which the appellant relies, in that clear, satisfactory and convincing manner that such contracts must be established when claimed to have been made with a person since deceased. In re Estate of Donaldson, 126 Iowa 174, 101 N. W. 870; Herriman v. McKee, 49 Iowa 185; Groh v. Miller, 196 Iowa 1367, 195 N. W. 259; Helmers v. Brand, 203 Iowa 587, 213 N. W. 384; Houlette v. Johnson, 205 Iowa 687, 216 N. W. 679; Glissman v. McDonald, 128 Neb. 693, 260 N. W. 182.''

The trial court determined that the evidence was insufficient to meet the requirements of the rule above stated. While its decision is not stated in language identical with that above quoted, we are disposed to the view and hold that such language

is applicable herein. Arthur is now deceased. His lips are sealed. The written evidence which he left is wholly inconsistent with the essential feature here asserted, namely, that the designation of Judith Anne was to be irrevocable. Also, the direct evidence to establish this vital feature of the contract is meager and, when considered with the evidence that is inconsistent therewith, is insufficient to meet the requirements of the rule applicable herein.

As heretofore pointed out, the testimony of Viola and her father asserts that a conversation was had with Arthur while the details of the divorce were being worked out. Viola testified as follows:

"My father raised the point that in case of Arthur's death or that something should happen to him so that he was unable to pay the Fifty Dollars a month. That is, he asked him what he could do to assure me that that would continue until Judith was old enough to care for herself and Arthur reminded me that I had this Pacific Mutual policy in the amount of Five Thousand Dollars. * * * That I had paid premiums on it, that I had it in my possession, that I could keep it and that he would not change the beneficiary and would continue to keep the policy in effect."

Her father's testimony is substantially the same. At the time that this conversation is asserted to have occurred, Viola had the policy. She had been designated beneficiary therein shortly after their marriage by endorsement dated July 3, 1935. The terms of the contract to which she testifies were that she would keep the policy and would remain the beneficiary. Thereafter the divorce decree was entered which incorporated within its provisions a stipulation between the parties, providing as follows:

"Come now the parties hereto who stipulate and agree that in the event a decree of divorce shall be awarded to the plaintiff upon the final hearing of this cause, the property rights of the parties and the plaintiff's claim for alimony, suit money, support and all other claims, together with the custody of the minor child shall, subject to the approval of the court, be fixed and

determined as follows: 1. The defendant shall pay to the plaintiff upon the signing of the decree of divorce herein, the sum of Two Thousand One Hundred Fifty Dollars ($2,150.00), which amount shall be in full and complete payment and satisfaction of plaintiff's claim for alimony, suit money, support, and in full of all claims of every kind, nature and description, which the plaintiff could assert against the defendant or his property."

In addition to the foregoing, the stipulation provided that Viola was to have custody of Judith Anne; Arthur to have the right to visit the child; Arthur to pay the clerk of court $50 on the 15th day of each month until Judith Anne became 18 years of age; Arthur to keep in force and effect an educational endowment insurance policy issued by the Equitable Life Insurance Company of Iowa in favor of Judith Anne; Viola to have all of the furniture and household goods then in her possession; Arthur to retain his automobile and other property in his possession; Viola to deliver to Arthur certain postal savings certificates of the approximate value of $1,020 and United States Savings Bonds in the approximate value of $225; Arthur to pay the court costs, including attorney fees for Viola's lawyers in the sum of $500. The policy with the Pacific Mutual involved herein is not mentioned in the stipulation or the decree that was entered pursuant thereto.

After the decree of divorce had been entered, there was a subsequent meeting between Arthur, Viola and her father, which Viola described as follows:

"On the evening of August 9, 1939, the day that I was granted my divorce, Mr. Shepherd called me over the phone. * * * He appeared very excited, stated that he had been talking to a friend of his, that he had been giving it some thought, said that he thought he made a mistake in leaving me beneficiary but was afraid of what would happen that Judith would not receive the money. He told me, of course, the policy was left with me for just one purpose and that was to take care of Judith, and he stated that possibly through no fault of mine that I might invest it unwisely or in the event of my remarriage someone else might get the money, and he wanted it to

be sure to go to Judy alone and to no one else. I told him that before we took any steps or made any change I would go over the matter with my father. * * * On the following morning I called father and he came to my house in the early morning of August 10, possibly nine or nine-thirty. Shortly thereafter, Mr. Shepherd arrived. * * * He repeated for my father's benefit what he had told me the night before, that he wanted to make a change in that policy so that Judith Anne directly would get that money in case of his death. * * * He said he would have the change made and his idea was to have it changed to Fifty Dollars a month payment in order to carry on with the arrangements we had made the day before in the decree and that he would take the policy and have that change made to Judith Anne. * * * He said he would have it made payable to Judith Anne and to no one else so that Judy would be the beneficiary and so that she would have the money."

Her father described the conversation in much the same language. It will be noted that in this conversation the original proposal was abandoned. It was expressly agreed that Arthur was to change the beneficiary to Judith Anne. Nothing was said about the designation being irrevocable. The policy was changed by the endorsements dated August 29, 1939, and August 30, 1939, which was approximately three weeks after the conversation was said to have occurred. The written request which Arthur executed contained the following provision: "I request that you change the beneficiary thereunder to Judith Ann Shepherd, Daughter of the Insured, or in the event that she shall die before the Insured, to William S. Shepherd, Brother of the Insured. * * * I hereby reserve the right to change the beneficiary at any time hereafter in the manner and form provided in said policy and do expressly request that such right shall obtain." The endorsement was made strictly in accordance with this request.

According to Viola, Arthur was to return the policy to her after the change of beneficiary had been made. Had this been done, it would have been difficult for Arthur to have made any subsequent changes in the policy because it was necessary to

return the policy to the company and any change in the designation of beneficiary would not be effective until written notice had been filed with the home office of the company, accompanied by the policy for endorsement, and endorsement had been made upon the policy. However, Arthur retained the policy until his death the following June. The endorsements that were made in March, 1940, are, of course, wholly inconsistent with the purported oral contract but were strictly in accord with written requests therefor executed by Arthur in each instance.

In contending that the foregoing evidence should compel us to reverse this case, counsel rely upon the following decisions of this court: Jacobson v. New York Life Ins. Co., 199 Iowa 770, 772, 202 N. W. 578; Beed v. Beed, 207 Iowa 954, 957, 958, 222 N. W. 442; Aetna Life Ins. Co. v. Morlan, 221 Iowa 110, 116, 117, 264 N. W. 58; Sovereign Camp, W. O. W. v. Russell, 214 Iowa 39, 41, 241 N. W. 395. We do not think these cases require a reversal herein.

In the Jacobson case, supra, the general rule is stated (199 Iowa 772, 202 N. W. 579) thus:

"It is settled law in Iowa that, where the right is reserved to change beneficiaries, the beneficiary first named acquired no vested interest in the policy, and the person insured has the right, at any time he may see fit, to change beneficiaries, on compliance with the rules and regulations of the company. This rule is held by this court in Hicks v. Northwestern Mut. L. Ins. Co., 166 Iowa 532; Townsend v. Fidelity & Casualty Co., 163 Iowa 713; Carpenter v. Knapp, 101 Iowa 712; Wandell v. Mystic Toilers, 130 Iowa 639; Condon v. New York Life Ins. Co., 183 Iowa 658; Schmidt v. Iowa K. of P. Ins. Assn., 82 Iowa 304; Hirschl v. Clark, 81 Iowa 200."

The four decisions relied upon all recognize this general rule. The exceptions to that rule, which said decisions announce and apply, do not control our decision here because the facts do not bring this case within any of those exceptions. In each instance, the contract asserted was supported by a present legal consideration. In the Jacobson case, the beneficiary was to pay premiums to become due. That was also

true in the Russell case. In the Morlan case, Mrs. Dutton was to support the insured and made loans of $1,500 in addition to the giving of support. In the Beed case, the policy was taken out *originally* for the protection of the surety on a note. The situation presented by the record herein is not analogous to any of the situations there presented to us.

Here the beneficiary who challenges the subsequent change is Judith Anne. She was not a party to the purported contract. It is merely asserted that the contract was made for her benefit. She furnished no consideration for the contract. Neither was there any legal consideration furnished in her behalf.

It is contended that Viola held the policy as security for $300 paid by her previously in premiums. This would not constitute consideration unless there was an obligation to repay said sum. On that issue Viola testified: ''Q. You expected a repayment to you did you, of these premiums you had advanced? A. We didn't discuss that.'' Also the stipulation upon which the divorce was granted and decree entered makes no reference to any such indebtedness and precludes the existence thereof.

It is also asserted that the policy was to stand as security for Arthur's legal obligation to contribute toward Judith's education and support. If such were the contract, it is strange that the educational policy with the Equitable was specifically mentioned in the stipulation upon which the decree of divorce was entered and this policy was ignored. Also, the contentions now made are inconsistent with such a theory. Arthur's legal obligation, under the decree of divorce, was to pay $50 per month toward the support of Judith, during Arthur's lifetime and while Judith was under 18 years of age. There is no suggestion that Arthur failed to make such payments during his lifetime. There is no effort made to enforce a lien against the policy to make good any such default. The purpose is to secure contributions toward the support of Judith after Arthur's death. The granting of such support is not the discharge of a legal obligation, but rather the making of a gift in the nature of a testamentary act.

In the case of Penn Mutual Life Ins. Co. v. Mulvaney, 221 Iowa 925, 933, 265 N. W. 889, 893, we followed the case

of Brown v. Grand Lodge A. O. U. W., 80 Iowa 287, 289, 45 N. W. 884, 20 Am. St. Rep. 420, in holding that the subject matter of an insurance policy is not property that may be the subject of a gift, stating:

"If the expectancy is not property, then the insured has nothing which would be the subject of a gift. The substance of the holding in the Brown case is that, under testimony practically identical with the testimony we have in the case at bar, there was no gift."

In line with this holding, counsel do not contend that there was a completed gift to Judith, but assert that her rights are based upon a binding contract for a valid consideration. The trial court determined that no such contract has been established by the evidence. With this decision we agree.

Many other propositions are argued in the briefs. In view of our decision on the vital issue in the case, we do not discuss or decide them. Various other issues are presented by the pleadings which remain to be determined by a trial on the law side of the docket. They were not transferred to equity, have not yet been determined and are not before us. The only matters before us are the issues that were presented by Count I of the cross-petition, and the answer thereto. As to such issues, the decree appealed from must be and it is affirmed.—Affirmed.

MITCHELL, SAGER, GARFIELD, OLIVER, WENNERSTRUM, STIGER, and BLISS, JJ., concur.